(No. 73054.—
(No. 73100.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JUDITH RENEE LOWE, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD NASSER, Appellant.

*Opinion filed November 19, 1992.*

Daniel D. Yuhas, Deputy Defender, and Gloria A. Morris, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant Judith Renee Lowe.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Jeffrey D. Foust, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant Richard Nasser.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

After a September 1990 bench trial, defendant Judith Renee Lowe was convicted of theft of property having a value in excess of $300 (Ill. Rev. Stat. 1989, ch. 38, pars. 16—1(a)(4)(A), (b)(4)). The court sentenced Lowe to 30 months of probation, conditioned upon her restitution of $2,925 to the trucking company which had employed her. Lowe appealed the restitution order, and the appellate court (No. 4—91—0337 (unpublished order under Supreme Court Rule 23)) affirmed.

After a bench trial in 1990, the court found defendant Richard Nasser guilty of arson (Ill. Rev. Stat. 1989, ch.

38, par. 20—1), perjury (Ill. Rev. Stat. 1989, ch. 38, par. 32—2), and violating the secured creditor criminal provisions of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1989, ch. 26, par. 9—306.01(1)(b)). The court sentenced Nasser to four years and one month of probation, on the conditions, *inter alia*, that he serve six months in jail and pay restitution of approximately $35,000. Nasser appealed, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of arson, and (2) the trial court erred in ordering him to pay restitution. The appellate court affirmed. 223 Ill. App. 3d 400.

This court allowed defendants' petitions for leave to appeal (134 Ill. 2d R. 315) and consolidated the two appeals. The sole issue on appeal is whether, under section 5—5—6 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6), restitution can be paid to victims of nonviolent crimes. We affirm.

The facts in these consolidated cases can be briefly summarized. In cause No. 73054, Lowe, a secretary, stole $2,925 through the use of her employer's checks. In cause No. 73100, Nasser cosigned a loan with Albert Clark, a passive investor in and co-owner of his termite control business, who also loaned him $15,000. In addition, Nasser leased vehicles from a Chevrolet dealership owned by Clark. Nasser did not pay any of his indebtedness, and sold one of the leased vehicles to another dealership before Clark could repossess. The building in which the termite control business was located burned down as a result of arson. Nasser was seen at that location shortly before the fire started. Both Lowe and Nasser were convicted and ordered to make restitution to their victims.

Defendants argue that they should not have been sentenced to repay their victims, because section 5—5—6 restricts the payment of restitution to those who are vic-

tims of violent crimes. The State responds that Lowe and Nasser have waived their argument through failure to object to restitution at their sentencing and in post-trial or post-sentence motions.

It is clear that a defendant's failure to make a timely objection at trial and to renew it in a post-trial motion operates as a waiver of the right to raise the issue as a ground for reversal on review. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209.) Further, an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error. *People v. Heard* (1947), 396 Ill. 215, 219-20.

At sentencing, Lowe's defense counsel told the court:

"I think probation is the appropriate sentence for this case. I think the court should fix the amount of restitution in the amount of the checks of which she was convicted *** [s]o I would ask the Court to fix restitution in that amount and my reason for that that [*sic*] is less than $3000.00."

Similarly, Nasser's defense counsel stated at sentencing:

"I don't wish to state on behalf of Mr. Nasser that he is unwilling to pay any amount of restitution that the Court determines is appropriate. *** So I don't wish to say that Mr. Nasser isn't willing to pay or wouldn't cheerfully pay whatever the Court would order or whatever the Court feels is appropriate."

By stating their willingness to pay restitution, defendants have waived any contentions of error in the court's order for them to repay the victims of their crimes. (*People v. Tharp* (1991), 217 Ill. App. 3d 429, 434.) The waiver rule, however, is a limitation on the parties, not on the reviewing court (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279), and a reviewing court may ignore it if necessary in order to ensure the maintenance of a sound and uniform body of precedent

(*Hux v. Raben* (1967), 38 Ill. 2d 223, 225). Therefore, because a conflict exists within the appellate court as to whether restitution may be ordered for victims of nonviolent crimes, we address the issue at this time.

In *Nasser* (223 Ill. App. 3d 400), the Fourth District of the Appellate Court refused to follow the Fifth District's decisions in *People v. Stocke* (1991), 212 Ill. App. 3d 547, and *People v. Sharp* (1989), 185 Ill. App. 3d 340, which held that restitution is available only to victims of violent crimes. Instead, the *Nasser* court reaffirmed the Fourth District's decision in *People v. Strebin* (1991), 209 Ill. App. 3d 1078, where the court held that the purpose of the restitution statute is to fully compensate *all* crime victims for their injuries.

The restitution statute, section 5—5—6 of the Code provides:

"In all convictions for offenses in violation of the Criminal Code of 1961 committed against any person 65 years of age or older in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant, the court shall order restitution as provided in this Section. In all other cases the court shall at the sentence hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense. If the court determines that an order directing the offender to make restitution is appropriate the offender may be sentenced to make restitution which shall be determined by the Court as hereinafter set forth:

(a) At the sentence hearing, the court shall determine whether the property may be restored in kind to the possession of the owner or the person entitled to possession thereof; or whether the defendant is possessed of sufficient skill to repair and restore property damaged; or whether the defendant should be required to make restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant or another for whom the

defendant is legally accountable under the provisions of Article V of the Criminal Code of 1961." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6.

The primary object of statutory interpretation is to give effect to the intent of the legislature. (*Croissant v. Joliet Park District* (1990), 141 Ill. 2d 449, 455.) An inquiry into legislative intent must begin with the language of the statute. (*Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 492.) Were we to read only those portions of section 5—5—6 set out above, we would have no difficulty in finding that a court may impose restitution on any person convicted of a criminal offense. However, in subsequent subsections of section 5—5—6 there are frequent references to the "victim" to whom restitution must be made. Section 5—1—22 of the Code states that " '[v]ictim' shall have the meaning ascribed to it in subsection (a) of Section 3 of the Bill of Rights for Victims and Witnesses of Violent Crime Act." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—22.) Section 3(a) of the Bill of Rights for Victims and Witnesses of Violent Crime Act (the Act) defines "Victim" as a person against whom a violent crime has been committed, and "Violent Crime" as a felony in which force or threat of force was used. (Ill. Rev. Stat. 1989, ch. 38, pars. 1403(a), (c).) Without more, we would have to accept that the legislature intended to restrict restitution to those who were victims of a violent crime. However, the introductory sentence of section 3 states that definitions of the Act shall apply "unless the context clearly requires otherwise." (Ill. Rev. Stat. 1989, ch. 38, par. 1403.) We believe that, within the context of section 5—5—6, the term "victim" has a broader meaning than that given it in the Act.

We must presume that, in enacting legislation, the legislature did not intend an absurd result. (*People v. Steppan* (1985), 105 Ill. 2d 310, 316.) The legislature

added section 5—1—22 to the Code in 1984. (Pub. Act 83—1499, eff. Dec. 27, 1984; 1984 Ill. Laws 3942.) Section 5—1—22 incorporates section 3 of the Act and thus defines victims as those injured by a violent crime. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—22.) At the same session in 1984, the legislature added subsection (b) to section 5—5—6. (Pub. Act 83—1061, eff. July 1, 1984; 1983 Ill. Laws 7226.) Subsection (b) provides:

> "In fixing the amount of restitution to be paid in cash, the court shall allow credit for property returned in kind, for property damages ordered to be repaired by the defendant, and for property ordered to be restored by the defendant; and after granting the credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and *any other victims* who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant, and insurance carriers who have indemnified the named victim or other victims for the out-of-pocket expenses, losses, damages, or injuries, provided that in no event shall restitution be ordered to be paid on account of pain and suffering. If a defendant fails to pay restitution in the manner or within the time period specified by the court, the court may enter an order directing the sheriff to seize any real or personal property of a defendant to the extent necessary to satisfy the order of restitution and dispose of the property by public sale. All proceeds from such sale in excess of the amount of restitution plus court costs and the costs of the sheriff in conducting the sale shall be paid to the defendant." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(b).

The purpose of section 5—5—6(b) was to make all victims whole for any injury received at the hands of the criminal to be sentenced. (*Strebin,* 209 Ill. App. 3d at 1084.) As the appellate court below points out, before subsection (b) was added to section 5—5—6 in 1984, the language within that section did not bar restitution to

the victims of nonviolent crimes. If, through the enactment of section 3 of the Act and section 5—5—6(b) of the Code, restitution were subsequently restricted to the victims of violent crimes, the intention of the legislature must have been to limit the types of victims to whom section 5—5—6 would apply. Such a result would be absurd, as it is contradictory to expand and simultaneously to narrow the applicability of a statute.

Where a statute is unclear, a court may consider legislative history in order to establish legislative intent. (*People v. Easley* (1988), 119 Ill. 2d 535, 540.) Such extrinsic sources as legislative debates may be relevant to the inquiry. (*Morel v. Coronet Insurance Co.* (1987), 117 Ill. 2d 18, 24.) Statements of representatives considering House Bill 67, which added subsection (b) to section 5—5—6, show a clear intent to expand the coverage of the restitution statute. As Representative Ropp stated:

> "This House Bill 67 provides new standards to make convicted persons more liable to pay, as restitution, the full amount of damages ***. *** It also extends the coverage of permissible restitution to include unnamed victims and insurers. And three, it also gives the authority to include restitution to victims of crimes where the charges of these crimes are dismissed as a part of a plea agreement on other offenses. *** *And it will also take care of those people who may not have been included in, heretofore, specific charges but may have been [injured as] a result of arson or other kind of bad acts.*" (Emphasis added.) (83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 51 (statements of Representative Ropp).)

We conclude then that the legislature did not intend to restrict the meaning of "victims" in section 5—5—6 to those who are injured by violent crimes. We find reinforcement for this view in the fact that the legislature added subsection (g) to section 5—5—6 of the Code in 1988. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(g), added by Pub. Act 85—1194, eff. Aug. 19, 1988; 1988 Ill.

Laws 1495, 1505-06.) Subsection (g) made it mandatory for the offender to pay for counseling of the victims of child sexual abuse. The term "victims" within subsection (g) encompasses those defined in section 11—20.1 of the Criminal Code of 1961 who are victims of child pornography. (Ill. Rev. Stat. 1989, ch. 38, par. 11—20.1.) Child pornography is not a crime of violence. Thus, if defendants' view were to prevail, the legislature must have intended through section 5—5—6(g) both to make the offenders responsible for expenses of counseling for their juvenile victims of sexual abuse and at the same time to bar that form of restitution. It would be absurd for the legislature to intend such a result. Consequently, we hold that section 5—5—6 was intended to apply to victims of both violent and nonviolent crimes.

Lowe and Nasser further argue that the order of restitution for victims of nonviolent crimes deprives defendants of due process. The purpose of the probation system, according to defendants, is to rehabilitate the offender, not to serve as a tool for the imposition of civil liability. (See *Sharp*, 185 Ill. App. 3d at 347; accord *People v. Richards* (1976), 17 Cal. 3d 614, 620, 552 P.2d 97, 100-01, 131 Cal. Rptr. 537, 540-41 (superseded by statute).) Such a concern was expressed in 1983 by members of the General Assembly in the debate concerning the adoption of subsection (b) of the restitution statute. At that time, the following exchange took place between Representatives Greiman and Hawkinson:

"Greiman: Does the defendant have a right to have a jury determine how much the value of the items are for which there's been a loss or alleged loss?

\* \* \*

Hawkinson: \*\*\* [T]hat is not presently the law, nor would it be under this Bill. However, as we have under the present law when there is a dispute as to restitution, the prosecutor, through testimony elicited from the vic-

tims, still must prove that up in front of the Judge and the Judge makes the determination. That burden of proof and the procedure would not change under this Bill.

Greiman: Well, so how do we deny the defendant his constitutional right to have a jury determine that? Don't you believe that he has a constitutional right in a civil matter, essentially civil?

Hawkinson: No. Under the present law, this determination is made only after a conviction or a finding of guilty for which, of course, he has the right to jury, but there is not [sic] right to determination of that, except in those instances where the value is determinative of whether it's a misdemeanor or a felony.

\* \* \*

Greiman: How about the ... Aren't we imposing on the state's attorney an obligation to represent, essentially represent them—the complaining witness?

\*\*\*

Greiman: Prove value ... Isn't that ... I mean, isn't that what we do when we enlarge this?

Hawkinson: I believe the state's attorney already has that obligation to represent the victims and, under the present law, to obtain restitution in those cases where it's possible." 83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 53-54 (statements of Representatives Greiman & Hawkinson).

It is evident from this colloquy that the Representatives considered both the constitutional rights of the offenders ordered to make restitution, and the means by which the process would be achieved. As Representative Hawkins pointed out, an order of restitution issues only after the offender has been convicted. Before that time, the defendant has been provided with all the safeguards of criminal procedure.

The purpose of the Code is to rehabilitate offenders and to return them to useful citizenship. (*People v. Mahle* (1974), 57 Ill. 2d 279, 285; Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2.) However, the Code also states a

purpose of prescribing sanctions proportionate to the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2(a).) Restitution has been invoked as a criminal sanction in this country since colonial times. (Roland, *Progress in the Victim Reform Movement: No Longer the "Forgotten Victim,"* 17 Pepp. L. Rev. 35, 41 (1989).) We consider that an order making the offender responsible for restitution of what he or she has taken from the victim is a sanction in no way disproportionate to the crime, and serves the double goal of making the offender responsible for his action and the victim whole. The focus of section 5—5—6 is upon the victim, not upon the civil interests of the criminal. The victim has already suffered emotional and financial trauma. In recovering what has been taken from him, the victim should be spared the additional expense, stress, and delay of civil litigation.

Although, as the appellate court below pointed out, a criminal defendant does not have the right to a jury determination of whether or in what amount restitution may be imposed on him, this is not the only instance in which he loses a measure of his civil liberties. Other provisions of the Code deprive offenders of their civil rights through imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1) or, in the case of those given probation, through the imposition of fines, public service work, home confinement and other sanctions (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3). Moreover, despite the defendants' contentions to the contrary, the offender who is ordered to make restitution is not entirely deprived of due process. The trial court must determine that the victim's claim is legitimate, based on information provided in the presentence report. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—2(a)(3).) If the offender makes a specific claim that the presentence report is inaccurate, the trial court can and should conduct whatever proceedings are necessary to obtain reliable infor-

mation on which to base its order of restitution. As in all sentencing, the court must consider all the circumstances of the case in order to ensure that the sanction imposed is appropriate and just. *People v. La Pointe* (1981), 88 Ill. 2d 482, 500.

For the above reasons, we hold that section 5—5—6 was intended to apply to victims of nonviolent as well as violent crimes. We further find that an order of restitution does not unduly deprive a criminal offender of his or her due process rights. Consequently, we affirm the judgments of the appellate court.

*No. 73054 — Affirmed.*

*No. 73100 — Affirmed.*