No. 2--96--0143

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE              )  Appeal from the Circuit

OF ILLINOIS,                         )  Court of Lake County.

                                     )

     Plaintiff-Appellee,             )  No. 95--CM--2937

                                     )

v.                                   )

                                     )

CHARLES THORNTON,                    )  Honorable 

                                     )  George Bridges,

     Defendant-Appellant.            )  Judge, Presiding.

_________________________________________________________________

     JUSTICE DOYLE delivered the opinion of the court:

     Defendant, Charles Thornton, was convicted of cruelty to an

animal in violation of section 3.01 of the Humane Care For Animals

Act (Act) (510 ILCS 70/3.01 (West 1994)).  The trial court imposed

a sentence that included, inter alia:  10 days of incarceration; 2

years of probation; 200 hours of community service; and restitution

totalling $3,571.83.  

     Defendant filed a timely appeal.  On appeal, defendant

contends that the trial court erred when it  (1) denied his motion

to suppress evidence which was seized in a warrantless search of

his residence; (2) required him to pay restitution; and (3) imposed

an excessive sentence on him.

     We will first address defendant's contention that the trial

court erred when it denied his motion to suppress evidence.  At a

hearing on the motion, Sergeant Ryland Woodruff testified as

follows.  On May 29, 1995, Woodruff was on duty as a police officer

for the Grayslake police department.  At approximately 9 a.m. on

that day, Woodruff responded to a report that a dog had been

barking for several days inside an apartment in an apartment

complex in Grayslake.  

     Woodruff went to the apartment complex and met with Debbie

Nissen, the manager of the apartment complex.  Nissen told Woodruff

that tenants had complained to her about a dog that had been

barking and yelping for two or three days inside apartment 104 in

the complex.  In response to these complaints, Nissen had

unsuccessfully tried to contact defendant, the tenant of apartment

104, by knocking on the door of defendant's apartment, by calling

defendant's apartment phone number, and by calling defendant's

place of employment.  Nissen also attempted to look inside

defendant's apartment, but could not see inside the apartment

because the blinds were closed.  

     Woodruff further testified that Nissen told him that she then

used a key to enter defendant's apartment.  Upon entering

defendant's apartment, Nissen found a brown-colored dog in a small

cage in a secondary bedroom.  The cage was so small that the dog

could not stand inside the cage.  The bottom of the cage was

covered with urine and feces.  There was no sign of food or water

in the cage.  The dog was very thin and had blood on its paws.  The

dog was shaking and continuously made a whimpering and yelping

sound.

     Woodruff also spoke with a tenant who lived in the apartment

above defendant's apartment.  This tenant told Woodruff that the

dog had been making the yelping sound continuously, "all day and

all night," for two or three days.

     Based on this information, Woodruff and another police officer

decided that it was necessary to enter immediately defendant's

apartment to "check on the well being of the dog."  As the police

officers came within six or seven feet of the entrance to

defendant's apartment, they detected a strong odor of feces and

urine.  Upon entering the apartment, the police officers discovered

a dog in a cage in conditions matching the conditions which  Nissen

had described.

     The trial court based its denial of defendant's motion to

suppress the evidence found in his apartment on the ground that the

police were justified in entering defendant's apartment without a

warrant because of an emergency related to the condition of the

dog.  On appeal, defendant contends that there are two reasons why

the trial court's ruling was erroneous:  (1) section 10 of the Act

specifically prohibits the entry into a residence without a

warrant; and (2) no emergency justified the warrantless entry.

     We first consider defendant's statutory argument.  Section 10

of the Act provides, in pertinent part:

          "Upon receiving a complaint of a suspected violation of

     this Act, a Department investigator, any law enforcement

     official, or an approved humane investigator may, for the

     purpose of investigating the allegations of the complaint,

     enter during normal business hours upon any premises where the

     animal or animals described in the complaint are housed or

     kept, provided such entry shall not be made into any building

     which is a person's residence, except by search warrant or

     court order."  510 ILCS 70/10 (West 1994).

     Defendant contends that the plain words of section 10 prohibit

the warrantless entry of a residence by police to investigate a

complaint regarding cruelty to an animal.  Defendant argues that

section 10 does not enumerate any exceptions to the warrant

requirement for the search of a residence and that therefore there

are no exceptions to the warrant requirement.  Defendant asserts

that the police violated the prohibition against warrantless entry

when they entered his apartment without a warrant to investigate a

complaint of cruelty to an animal.

     The State responds that defendant has misread section 10.  The

State contends that the obvious intent of the legislature in

enacting section 10 was to broaden the protection for animals

subjected to cruelty.  The State argues that the legislature sought

to do this by granting an extraordinary exception in section 10 to

the general warrant requirement for searches of nonresidential

premises.  In the State's view, the language in section 10

specifying that a warrant is required to search a residence merely

indicates that the extraordinary exception does not apply to

searches of residences, but does not mean that there are no

exceptions to the warrant requirement.

     The primary objective in construing the meaning of a disputed

statute is to ascertain and give effect to the intent of the

legislature.  People v. Robinson, 172 Ill. 2d 452, 457 (1996).  The

most reliable indicator of legislative intent is the language of

the statute itself.  People v. Tucker, 167 Ill. 2d 431, 435 (1995). 

In construing the statute, a court should consider every part of

the statute together.  People v. Warren, 173 Ill. 2d 348, 357

(1996).  Because the construction of the statute is a question of

law, our review is de novo.  Robinson, 172 Ill. 2d at 457.

     With these principles in mind, and viewing the language of

section 10 of the Act as a whole, we agree with the State's

position.  The language in section 10 which states that "entry

shall not be made into any building which is a person's residence,

except by search warrant or court order," is plainly intended to

make it clear that the extraordinary exception to the general

warrant requirement for investigatory searches of nonresidential

premises set out in section 10 does not extend to residential

premises.  There is nothing in section 10 which suggests that this

language means that the few specifically established and well-

delineated exceptions to the general warrant requirement for entry

into residential premises (see Katz v. United States, 389 U.S. 347,

357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967)) are not

applicable under the Act.

     A contrary construction of section 10 would prevent government

agents from entering a residence without a warrant even when faced

with exigent circumstances.  Such a result would be absurd.  We

presume that in enacting section 10 the legislature did not intend

to produce an absurd, inconvenient or unjust result.  Schirmer v.

Bear, 174 Ill. 2d 63, 73 (1996).  For these reasons, we must reject

defendant's proposed construction of section 10.

     Next, we turn to defendant's contention that there was no

emergency in this case that justified a warrantless entry of his

residence by the police.  The fourth amendment to the United States

Constitution (U.S. Const., amend. IV) prohibits all unreasonable

searches and seizures.  A warrantless search of a home is

presumptively an unreasonable search in violation of the fourth

amendment.  Payton v. New York, 445 U.S. 573, 586, 63 L. Ed. 2d

639, 651, 100 S. Ct. 1371, 1381 (1980).

     However, the supreme court has recognized an "emergency

exception" to the warrant requirement.  The emergency exception

allows police to enter and search residential premises without a

warrant for the purpose of protecting and preserving life or

property and to avoid serious injury.  Mincey v. Arizona, 437 U.S.

385, 393-94, 57 L. Ed. 2d 290, 300-01, 98 S. Ct. 2408, 2413 (1978).

     The basic elements of the emergency exception to the general

warrant requirement are (1) the police must have reasonable grounds

to believe that there is an emergency at hand and an immediate need

for their assistance for the protection of life or property; (2)

the search must not be primarily motivated by intent to arrest or

seize evidence; and (3) there must be some reasonable basis,

approximating probable cause, to associate the emergency with the

area or place to be searched.  People v. Bondi, 130 Ill. App. 3d

536, 539 (1984).  

     Our research has not revealed any Illinois case in which a

court has applied the emergency exception to a situation involving

the mistreatment of animals.  However, courts in other

jurisdictions have applied the emergency exception to such

situations.  See Suss v. American Society for Prevention of Cruelty

to Animals, 823 F. Supp. 181 (S.D.N.Y. 1993); Tuck v. United

States, 477 A.2d 1115 (D.C. App. 1984); State v. Bauer, 127 Wis. 2d

401, 379 N.W.2d 895 (1985).

     The guiding principle in fourth amendment search and seizure

cases is reasonableness.  People v. Free, 94 Ill. 2d 378, 395

(1983).  In determining the reasonableness of the belief that an

emergency exists, courts must take into account the totality of the

circumstances known to the officers at the time of their entry. 

People v. Paudel, 244 Ill. App. 3d 931, 939 (1993).  A reviewing

court should not disturb a trial court's ruling on a motion to

suppress unless the ruling is manifestly erroneous.  People v.

Miller, 173 Ill. 2d 167, 181 (1996). 

     In this case, the totality of the circumstances known to the

officers at the time of their entry into defendant's apartment was

sufficient for the officers to reasonably believe that an emergency

was at hand which required their immediate assistance.  The tenant

in the apartment above defendant's apartment told the officers that

a dog had been yelping in defendant's apartment continuously for

two or three days.  Efforts by Nissen, the manager of the apartment

complex, to contact defendant were unsuccessful.  Thus the officers

knew that the yelping had persisted for several days, but did not

know when, or if, defendant might return to his apartment to tend

to the distressed animal.

     Nissen had previously entered defendant's apartment and

observed the yelping dog.  Nissen told the officers that the dog

was in a filthy cage which was so small that the dog could not

stand.  Nissen told the officers that the dog was very thin and

that there was no sign of food or water available.  Nissen told the

officers that the dog was bleeding and was shaking.  Based on this

information, the officers could have reasonably believed that the

dog was not merely "uncomfortable," but was in need of immediate

assistance to avoid serious injury or, possibly, death.  

     Defendant argues that, because there was no evidence of a

change in the dog's yelping, the officers did not have a reasonable

basis to conclude that the dog's condition was dire.  This argument

is unpersuasive.  The dog's constant yelping over such an extended

period of time could also have been taken as an indication of the

intensity of the dog's suffering.  The officers could have

reasonably believed that the dog had been confined in a tiny,

filthy cage without food or water for up to three days.  Moreover,

the officers could have reasonably believed that the dog was

injured and was bleeding.  This was sufficient for the officers to

conclude that an emergency was at hand which required their

immediate assistance.

     Defendant's argument that the officers should have gone to the

county courthouse, which was only 15 or 20 minutes away, for a

search warrant before entering his apartment does not require a

different result.  The amount of time it might have taken the

officers to obtain a search warrant is unclear, and the officers

had a reasonable belief that they had to act at once to aid the

dog.

     Defendant also argues that the officers' actions in taking

pictures of the dog upon their entry into defendant's apartment

belie the State's position that the officers were motivated to

assist the dog.  Our review of the record indicates that any pause

by the officers to take pictures of the dog was apparently quite

brief and does not show that the officers were primarily motivated

by an intent to seize evidence.  Rather, the record shows that the

officers were primarily motivated by their reasonable belief that

the dog was in need of immediate assistance to protect its life or

prevent it from being seriously injured.

     For these reasons, we conclude that the trial court's denial

of defendant's motion to suppress was not manifestly erroneous.  

     Defendant next contends that the trial court erred when it

ordered him to pay restitution.  Alternatively, defendant contends

that the trial court erred in determining the amount of restitution

that he was required to pay.

     The trial court ordered defendant to pay $3,571.83 in

restitution to the Lake County Health Department Animal Control

Division (Department).  The amount of the restitution ordered by

the court was based on a fee statement prepared by the Department. 

The fee statement indicated that $2,772 of the restitution amount

was for 231 days of boarding the dog by the Department at a rate of

$12 per day.  Most of the balance of the restitution ordered was

for various veterinary costs.

     Defendant posits that the trial court "presumably" entered the

restitution order pursuant to section 5--5--6 of the Unified Code

of Corrections (Code) (730 ILCS 5/5--5--6 (West 1994)).  Defendant

acknowledges that section 5--5--6 authorizes a trial court to

require a criminal defendant to make restitution for "out-of-pocket

expenses, damages, losses, or injuries found to have been

proximately caused by the conduct of the defendant" (730 ILCS 5/5--

5--6(a) (West 1994)) and suffered by the victim or victims of a

defendant's conduct (730 ILCS 5/5--5--6(b) (West 1994)).  However,

defendant asserts that the term "victim," as used by the Code, does

not encompass the Department.  Based on his position that the

Department is not an appropriate "victim" under section 5--5--6,

defendant argues that the trial court erred when it ordered him to

pay restitution to the Department.  

     The State responds by first disagreeing with defendant's

presumption that the trial court ordered restitution pursuant to

section 5--5--6 of the Code.  The State contends that the trial

court could have required defendant to pay restitution under

section 12 of the Act (510 ILCS 70/12 (West 1994)), which creates

a lien on an impounded animal for the expenses of the impoundment. 

Alternatively, the State contends that the trial court could also

have properly ordered restitution under section 5--5--6 of the

Code.  Finally, the State suggests that defendant waived the issue

of the propriety of restitution because he did not raise the issue

at trial.  

     We will first address the question of waiver.  The State

contends that defendant acquiesced in the imposition of restitution

by arguing at trial only that the amount of the restitution was

excessive, but not arguing that restitution was an unauthorized

disposition.  The State argues that defendant may not raise the

issue of the trial court's authority to impose restitution for the

first time on appeal.  

     Since defendant's argument addresses the authority of the

trial court to order the restitution, we disagree.  See In re

V.L.F., 174 Ill. App. 3d 930, 933 (1988).  Also, because defendant

argues that the trial court exceeded its authority under the

restitution statute by awarding restitution to a person who is not

considered a victim under the statute, the order may be considered

void and attacked at any time.  In re D.R., 219 Ill. App. 3d 13, 16

(1991).

     With respect to the merits of the restitution issue, the State

first contends that under section 12 of the Act (510 ILCS 70/12

(West 1994)) defendant was personally liable for the costs of the

care the Department provided for his dog.  Section 12 of the Act

sets out procedures for notifying a violator of the Act that an

animal has been impounded and for a hearing when the violator

appeals the impoundment.  Section 12 then provides, in relevant

part, as follows:

          "Any expense incurred in such impoundment becomes a lien

     on the animal impounded and must be discharged before the

     animal is released from the facility.  When the animal is not

     claimed by its owner and all impoundment costs satisfied

     within 7 days, it may be sold at public or private sale for

     fair consideration to a person capable of providing care

     consistent with this Act, with the proceeds of that sale

     applied first to discharge the lien and any balance to be paid

     over to the owner.  If no purchaser is found, the animal may

     be offered for adoption or disposed of in a manner not

     inconsistent with this or any other Act."  510 ILCS

     70/12(b)(6) (West 1994).

     The State contends that this language in section 12 made

defendant personally liable for the costs of the care which his

wrongdoing precipitated.  In the State's view, a lien arose under

section 12 when the Department impounded defendant's dog.  The

State asserts that the cost of the impoundment and other necessary

expenses related to the impoundment were therefore a debt which the

trial court had the power to collect by ordering defendant to pay

restitution.  

     We disagree with the State's construction of section 12.  The

State contends that section 12 shows a legislative intent to make

a violator of the Act personally liable for the costs of the care

which his wrongdoing precipitated because section 12 allows a lien

on an animal which is impounded.  We initially note that there were

no formal impoundment proceedings here as contemplated in section

12.  Even assuming there had been, the State does not explain how

the existence of a civil debt to the county would, in itself,

automatically empower a court to order summarily the debtor to make

payment of the debt as restitution in a criminal prosecution. 

Moreover, section 12, by itself, does not provide authority for a

court to order restitution from the violator to pay the costs of

the care.  Rather, the plain language of section 12 sets out only

one source for the payment of the costs of impoundment, i.e., the

proceeds, if any, from the sale of the animal.  510 ILCS

70/12(b)(6) (West 1994).

     For these reasons, we reject the State's argument that section

12 provided authority for the trial court to order defendant to pay

restitution for the costs related to the impoundment of his dog. 

     We turn now to the State's contention that section 5--5--6 of

the Code authorized the trial court to order defendant to pay

restitution for these costs.  Section 5--5--6 of the Code provides,

in relevant part, as follows:

          "In fixing the amount of restitution to be paid in cash,

     *** the court shall assess the actual out-of-pocket expenses,

     losses, damages, and injuries suffered by the victim named in

     the charge and any other victims who may also have suffered

     out-of-pocket expenses, losses, damages, and injuries

     proximately caused by the same criminal conduct of the

     defendant ***."  730 ILCS 5/5--5--6(b) (West 1994).

     Defendant correctly notes that the Code provides a definition

of the term "victim."  730 ILCS 5/3--1--2(n) (West 1994) (cross

referencing 725 ILCS 120/3(a) (West 1994)).  The designated

definition specifies five types of "persons" who may be considered

a victim.  These are (1) a person physically injured as a result of

a violent crime; (2) a person who suffers injury to or loss of

property as a result of a violent crime; (3) a close relative of a

person against whom a violent crime is perpetrated; (4) any person

against whom a violent crime has been committed; and (5) any person

who has suffered personal injury as a result of a violation of

certain statutory provisions.  725 ILCS 120/3(a) (West 1994).

     Defendant argues that the Code's definition of victim does not

include the Department.  In support of this position, defendant

cites People v. McGrath, 182 Ill. App. 3d 389 (1989), and cases

cited therein which hold that law enforcement agencies are not

entitled to restitution for costs related to investigating and

prosecuting crimes because these agencies are funded to provide

such services.  Defendant reasons that the Department should not be

construed as a victim because the Department was simply providing

services to board and house the dog, which are within the

Department's normal course of operations.

     Defendant acknowledges that the dog could be considered a

"victim" under section 5--5--6 if it were a person.  However,

defendant argues that an animal is not a "person" to whom, or on

whose behalf, restitution can be paid because an animal is

considered property under the statute.

     The State counters that defendant is incorrect in his position

that the definition of victim under section 5--5--6 is limited to

the definition designated in the Act.  The State cites People v.

Lowe, 153 Ill. 2d 195 (1992), where our supreme court stated that

"within the context of section 5--5--6, the term 'victim' has a

broader meaning than that given it in the [Code]".  Lowe, 153 Ill.

2d at 201.  The Lowe court then held that the meaning of "victim"

in section 5--5--6 is not restricted to those who are injured by

violent crimes, but also includes victims of nonviolent crimes. 

Lowe, 153 Ill. 2d at 207.  The State also points to section 3--1--1

of the Code, which provides that "[f]or the purposes of this

Chapter, the words and phrases described in this Article have the

meanings designated in this Article, except when a particular

context clearly requires a different meaning." 730 ILCS 5/3--1--1

(West 1994).

     Urging a broader and/or contextually required definition of

"victim," the State argues that either the dog or the Department

can be properly characterized as a victim under section 5--5--6. 

The State reasons that animals are owed a duty of care

substantially like that owed to humans and that the Department was

obliged to render services to the dog substantially like those that

would be required by a human in the same circumstances.

     We cannot agree with the State's position.  The definition of

"victim" provided in the Code plainly specifies that a victim must

be a "person."  725 ILCS 120/3(a) (West 1994).  The State has not

cited any case where an animal was considered a victim in the

context of a restitution statute.

     In view of the plain language in the statutory definition

specifying that a victim must be a person, and in view of the lack

of authority for broadening the definition to include an animal in

the definition of "person," we conclude that the definition of

"victim" in section 5--5--6 does not include an animal.  Thus, the

dog in this case was not a victim under section 5--5--6.

     Nor can we conclude that the Department was a victim under

section 5--5--6.  We are aware that the appellate court has held

that a trial court may, in certain circumstances, order restitution

to an agency which has provided services to a victim.  See, e.g.,

People v. Strebin, 209 Ill. App. 3d 1078 (1991) (restitution proper

to agency which provided counseling services to victim).  However,

we are not aware of any Illinois case ordering restitution to an

agency where there has not been an underlying victim or where the

"victim" was an animal.

     Section 5--5--6 allows a trial court to order restitution to

a victim, or, in certain circumstances, an agency that has provided

services to a victim.  But, under section 5--5--6, it is essential

that there be a victim. 

     In this case, no victim that meets the statutory definition of

that term, or any previously broadened definition of that term, has

been identified.  Consequently, to the extent that it relied on

section 5--5--6, the trial court erred when it ordered defendant to

pay restitution.  

     Because the State has not cited any authority that supports

the restitution order, the order must be vacated.  Consequently, we

need not address defendant's contention that the amount of the

restitution ordered was excessive.  Parenthetically, we note that

in similar future cases the State will not be without the option of

seeking the imposition of an appropriate fine as a financial

penalty against convicted offenders.

     Defendant next contends that the trial court abused its

discretion by imposing an excessive sentence.  The trial court

imposed a sentence that included 10 days of incarceration (stayed

pending a subsequent determination of compliance); 2 years of

probation; 200 hours of community service; and restitution of

$3,571.83.  In addition, the sentencing order required defendant,

inter alia, to undergo a mental health evaluation; obtain a GED;

have no contact with animals; refrain from consuming alcohol or

drugs while on probation; and submit to random urine and breath

analysis.  The trial court also ordered that the dog be placed for

adoption.  

     Defendant contends that this punishment was disproportionate

to the severity and nature of the offense of cruelty to an animal. 

In support of his contention, defendant compares the sentence

imposed on him with the sentence imposed on a defendant in a

totally unrelated case involving the offense of cruelty to an

animal.   

     Defendant cites no authority in support of his proposition

that the propriety of a sentence may be determined by comparing the

sentence with a sentence or sentences imposed in unrelated cases. 

Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)) requires an

appellant to cite authority in support of his legal arguments on

appeal.  Because defendant has not cited any authority in support

of his argument, the argument is waived and we need not address it. 

Chicago Title & Trust Co. v. Weiss, 238 Ill. App. 3d 921, 927

(1992).

     Even if defendant had not waived this issue, defendant's

arguments are unavailing.  This court recognizes the principle that

fundamental fairness and respect for the law require that

defendants similarly situated not receive grossly disparate

sentences.  People v. Brown, 103 Ill. App. 3d 306, 309 (1982). 

However, that principle applies to the unfairness of imposing

grossly disparate sentences on codefendants for the commission of

the same offense.  Brown, 103 Ill. App. 3d at 309.  The principle

does not apply to the commission of similar or identical offenses

in separate cases involving the same defendant (Brown, 103 Ill.

App. 3d at 309) or defendants who are not codefendants (People v.

Terneus, 239 Ill. App. 3d 669, 674-78 (1992)). Consequently,

defendant's argument that his sentence is excessive because it was

disproportionately harsh when compared to the sentence imposed in

an unrelated case is without merit.

     Finally, we address the question of whether, without referring

to other cases, defendant's sentence was excessive.  Because a

trial court is in a superior position to assess the credibility of

the witnesses and to weigh the evidence presented at the sentencing

hearing, a trial court has broad discretionary powers in choosing

the appropriate sentence a defendant should receive.  People v.

Jones, 168 Ill. 2d 367, 373 (1995).  Therefore, when a reviewing

court examines the propriety of a sentence imposed by a trial

court, the reviewing court should proceed with great care and

caution.  People v. Streit, 142 Ill. 2d 13, 19 (1991).  A reviewing

court may not alter a sentence imposed by a trial court without a

showing that the punishment imposed constituted an abuse of

discretion.  People v. Illgen, 145 Ill. 2d 353, 379 (1991).

     After a careful review of the record in this case, we conclude

that the trial court did not impose an excessive sentence on

defendant.  A first offense for cruelty to an animal is a Class C

misdemeanor.  510 ILCS 70/16(c)(6) (West 1994).  The offense is

therefore punishable by a sentence of incarceration of not more

than 30 days.  730 ILCS 5/5--8--3(a)(3) (West 1994).  Thus, the 10-

day sentence of incarceration imposed on defendant in this case is

substantially less than the maximum sentence which the trial court

could have imposed.  Moreover, we note that, under the terms of the

sentence, defendant could avoid incarceration entirely by complying

with the other terms of the sentence.

     As determined above, the restitution part of the sentence was

improper and must be vacated.  As to the probation and community

service parts of the sentence, the record shows that the trial

court imposed these terms and conditions after carefully

considering the appropriate factors in aggravation and mitigation

presented at the sentencing hearing.  After reviewing the record,

we cannot say that the trial court abused its discretion in

imposing these terms and conditions. 

     Based on the foregoing, the judgment of the trial court of

Lake County is affirmed.  The sentence is affirmed except for the

order requiring restitution which is vacated.  

     Affirmed in part and vacated in part.

     McLAREN and HUTCHINSON, JJ., concur.