NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

                Docket No. 80672--Agenda 4--January 1997.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GLENN W. MEYER,

                               Appellant.

                      Opinion filed April 17, 1997.

                                    

     JUSTICE McMORROW delivered the opinion of the court:

     The sole question presented for our review in the instant case

is whether section 5--6--3(b) of the Unified Code of Corrections

(Code) (730 ILCS 5/5--6--3(b) (West 1994)) authorizes a trial court

to order, as a condition of probation, that the defendant post a

large sign at all entrances to his family farm which reads

"Warning! A violent felon lives here. Enter at your own risk!" The

appellate court affirmed the trial court's imposition of this

condition (277 Ill. App. 3d 784), and defendant appealed (134 Ill.

2d R. 612). We reverse, and hold that the trial court exceeded the

scope of its sentencing authority because posting a sign of this

type is not a reasonable condition of probation under section 5--6-

-3(b) of the Code. Therefore, we vacate the order of the circuit

court in part.

                                BACKGROUND

     Following a jury trial, the defendant, Glenn Meyer, was

convicted of aggravated battery of Gary Mason. The trial testimony

showed that on February 25, 1995, Gary Mason visited the

defendant's farm in order to return some vehicle parts that he

purchased from the defendant. Mason and the defendant began to

quarrel over whether the parts were functioning properly. During

the argument the defendant swung one of the parts at Mason,

striking him in the nose and eye, causing several injuries.

     At the defendant's sentencing hearing, evidence was presented

in aggravation and mitigation. On behalf of the State, Tim Belford

testified that in September 1986, he went to the defendant's farm

in order to collect monies for two insufficient fund checks issued

by defendant to Belford's employer, the First National Bank of

Pittsfield. Belford stated that the defendant eventually gave him

the money, but then kicked him and ordered him off of the farm.

Belford acknowledged that a jury acquitted the defendant of

aggravated battery charges stemming from this incident.

     Next, Harry Dyel testified that in May of 1990, he went to the

defendant's farm on behalf of his employer, Shelter Insurance

Company, in order to investigate a claim filed by the defendant.

Dyel testified that the defendant became hostile because he was

annoyed by the company's failure to process his claim promptly.

Dyel stated that after he attempted to comply with the defendant's

demands for payment, the defendant pushed him down and kicked him

several times, causing injuries to his torso, arms, face and head.

The defendant was convicted of the aggravated battery of Dyel.

Finally, Gary Mason, the victim in the present case, testified

regarding the defendant's actions on February 25, 1995.

     Several witnesses testified in mitigation. Kenwood Foster

testified that he is a licensed clinical social worker who operates

a private counselling service. The defendant began seeing Foster in

the fall of 1991. Foster testified that doctors at several

different clinics have diagnosed the defendant as having "major

depressive disorder" or clinical depression. Foster further stated

that he believes that the defendant may also suffer from a

condition similar to a type of post-traumatic stress disorder. He

indicated that the defendant has been taking prescription

medication known as Zoloft, to control his illness.

     Foster further testified that certain stresses, such as a

perceived threat to the defendant or his family, could trigger a

change in the defendant's behavior. Foster acknowledged that the

defendant may perceive certain behavior as threatening, even if the

average individual would not feel threatened under similar

circumstances.

     Friends of the defendant, Gregg Smith, David Gratton and Bruce

Lightle, also testified. All three described the defendant's good

character and reputation within the community.

     Mary Meyer, the defendant's wife of 36 years, testified that

the defendant's elderly mother relies on the defendant, her only

child, for care and assistance. Mrs. Meyer stated that she teaches

high school, and has always relied on the defendant to manage the

farm. She indicated that her family would suffer great hardship if

the defendant were incarcerated. Mrs. Meyer also testified

regarding the defendant's prolonged psychological illness and his

efforts to control his sickness with medication.

     In addition to the testimony of the witnesses, 20 letters were

submitted by individuals from throughout the defendant's community.

These letters chronicle examples of the defendant's generosity and

willingness to assist friends and neighbors in need. The letters

contain many descriptions of the defendant's good character and

reputation.

     Additionally, the presentence investigation report contains a

detailed description of the defendant's mental health history.

Several psychological evaluations of the defendant, dating from

1989, show that he suffers from major depressive disorder and

possibly an additional psychological malady.

     Upon evaluating all of the evidence in mitigation and

aggravation, the trial court sentenced the defendant to 30 months'

probation. The court considered the defendant's family members and

the adverse impact that incarceration would have upon them. The

court stated that it considered that the defendant was 62 years

old, his mother's age and ill-health, and Mary Meyer's need to have

the defendant care for the farm, in deciding to sentence the

defendant to probation instead of prison.

     The court conditioned defendant's probation on the following:

(1) payment of $9,615.95 in restitution, (2) payment of a $7,500

fine, (3) payment of a $25 monthly probation services fee, (4)

psychological psychiatric evaluation and treatment, (5) one-year

home confinement and (6) the placement of a "violent felon" warning

sign at each entrance to the defendant's property for the duration

of the probation period. With respect to the sign requirement, the

court stated that it believed that "maybe [the sign] will protect

society." The court's supplemental order regarding the sign

provides:

               "As a condition of probation defendant shall erect

          and maintain at each entrance of his property a 4' X 8'

          sign with clearly readable lettering at least 8'' in

          height reading: `Warning! A Violent Felon lives here.

          Enter at your own Risk!' To be erected by 8-11-95.' "

     The defendant appealed his sentence, arguing that the sign was

an improper condition of probation. The appellate court determined

that section 5--6--3(b) authorized the trial court to order the

sign as a reasonable condition of probation, and affirmed the trial

court on this issue. We granted the defendant leave to appeal

pursuant to Supreme Court Rule 612 (134 Ill. 2d R. 612).

                                 ANALYSIS

     The sole issue presented to us for review is whether the trial

court was authorized to order the violent felon warning sign as a

condition of probation. The defendant maintains that the trial

court acted outside of the scope of its sentencing authority

because the sign is not a reasonable condition of probation within

the meaning of the Unified Code of Corrections (730 ILCS 5/5--6--

3(b) (West 1994)). Section 5--6--3(b) of the Code lists 16

permissible probation conditions that the trial court may impose

"in addition to other reasonable conditions relating to the nature

of the offense or the rehabilitation of the defendant as determined

for each defendant in the proper discretion of the Court."

(Emphasis added.) 730 ILCS 5/5--6--3(b) (West 1994). The defendant

maintains that the warning sign is not a reasonable condition of

probation because it does not comport with traditional notions of

punishment or probation in Illinois, and instead is an unauthorized

"shaming penalty" or a scarlet letter type of punishment. The

defendant argues that nothing in the Code supports the subjection

of probationers to public ridicule as a goal of probation.

     The State responds that while the sign may embarrass the

defendant, it is not intended to subject him to public ridicule.

Rather, the State and the amicus curiae, the American Alliance for

Rights and Responsibilities, contend that this condition of

probation furthers the goals of probation because it protects the

public and serves to rehabilitate the defendant.

     The State maintains that the sign protects the public by

warning against provoking the defendant and by reducing the number

of guests or business invitees who visit the farm. The State and

the amicus argue that the goal of rehabilitation is fostered by the

sign because it reminds the defendant that society disapproves of

his criminal conduct. The amicus further argues that because the

sign reminds the defendant of his offense, the defendant will

modify his behavior and will be less likely to commit acts of

violence in the future. Finally, both the State and the amicus

argue that the trial court acted within its discretion by carefully

fashioning the conditions of probation to correspond to the needs

of the defendant and the public.

     Generally, the trial court is afforded wide discretion in

fashioning the conditions of probation for a particular defendant.

See People v. Harris, 238 Ill. App. 3d 575 (1992). However, while

the trial court has discretion to impose probation conditions which

will foster rehabilitation and protect the public, the exercise of

this discretion is not without limitation. See Harris, 238 Ill.

App. 3d at 581.

     Section 5--6--3(b) of the Code contains 16 permitted

conditions of probation which may be imposed "in addition to other

reasonable conditions." (Emphasis added.) 730 ILCS 5/5--6--3(b)

(West 1994). Requiring the defendant to erect a sign on his

property, proclaiming his status as a violent convicted felon, is

not statutorily identified as one of the conditions of probation.

The statute gives the trial court the discretion to impose

additional conditions of probation provided that they are

reasonable. See People v. Ferrell, 277 Ill. App. 3d 74, 79 (1995).

In Ferrell, the court determined that a probation condition not

expressly enumerated in the statute may be imposed as long as it is

(1) reasonable and (2) relates to (a) the nature of offense or (b)

the rehabilitation of the defendant as determined by the trial

court. See also People v. Hubble, 81 Ill. App. 3d 560 (1980);

People v. Dunn, 43 Ill. App. 3d 94 (1976). We must, therefore,

determine whether compelling defendant to post a 4-foot by 8-foot

sign in front of his residence which, in 8-inch high letters,

states that defendant is a violent felon is a reasonable condition

under section 5--6--3 of the Code.

     Section 1--1--2 of the Unified Code of Corrections provides:

               "The purposes of this Code of Corrections are to:

               (a) prescribe sanctions proportionate to the

          seriousness of the offenses and permit the recognition of

          differences in rehabilitation possibilities among

          individual offenders;

               (b) forbid and prevent the commission of offenses;

               (c) prevent arbitrary or oppressive treatment of

          persons adjudicated offenders or delinquents; and

               (d) restore offenders to useful citizenship." 730

          ILCS 5/1--1--2 (West 1994).

     Consistent with this legislative intent, this court has

recognized repeatedly that the purpose of probation is to benefit

society by restoring a defendant to useful citizenship, rather than

allowing a defendant to become a burden as an habitual offender.

People v. Lowe, 153 Ill. 2d 195 (1992); In re G.B., 88 Ill. 2d 36

(1981); People v. Molz, 415 Ill. 183 (1953). Probation

simultaneously serves as a form of punishment and as a method for

rehabilitating an offender. In re G.B., 88 Ill. 2d at 44.

Protection of the public from the type of conduct that led to a

defendant's conviction is one of the goals of probation. People v.

Cozad, 158 Ill. App. 3d 664 (1987).

     The State argues that the warning sign in the case at bar is

a reasonable condition of probation because it is consistent with

the permissible conditions listed in section 5--6--3(b) and

furthers the goals of probation.

     Although the sign may foster the goals of probation to the

extent that it punishes the defendant and protects the public,

furtherance of these two goals alone does not render the condition

reasonable. Indeed, we are persuaded by defendant's contention that

the sign, in fact, may hamper the goal of rehabilitation, and that

the erection of the sign is inconsistent with the conditions of

probation listed in section 5--6--3(b). We recognize that the trial

court labored arduously and sincerely to develop a sentence which

would serve the needs of society and simultaneously avoid

incarceration of the defendant. Nonetheless, we hold the sign

condition of probation imposed in this case was unreasonable and

did not serve the purposes of section 5--6--3(b).

     The Tennessee Supreme Court in State v. Burdin, 924 S.W.2d 82

(Tenn. 1996), considered and rejected a comparable "shaming sign,"

finding that it was unreasonable. The Tennessee court held that the

Tennessee statute at issue there did not authorize a condition of

probation which required the defendant to erect a sign in the front

yard of his residence which read, "Warning, all children.

[Defendant] is an admitted and convicted child molester. Parents

beware."

     In Burdin, the defendant pleaded guilty to sexual battery of

a 16-year-old victim. As a condition of probation, the court

ordered the defendant to place the warning sign in the front his

residence where he lived with his mother. The Tennessee statute,

like the Illinois statute, provided a non-inclusive list of

permissible probation conditions. The Tennessee statute also

contained a provision which stated, in part, that the defendant may

be required to satisfy "any other condition [of probation]

reasonably related to the purpose of the offender's sentence and

not unduly restrictive of the offender's liberty, or incompatible

with the offender's freedom of conscience, or otherwise prohibited

by this chapter."

     The Burdin court stated:

          "The consequences of imposing such a condition without

          the normal safeguards of legislative study and debate are

          uncertain. Posting a sign in the defendant's yard would

          dramatically affect persons other than the defendant and

          those charged with his supervision. *** [C]ompliance with

          the condition would have consequences in the community

          perhaps beneficial, perhaps detrimental, but in any event

          unforeseen and unpredictable." Burdin, 924 S.W.2d at 87.

     Similarly, in People v. Johnson, 174 Ill. App. 3d 812 (1988),

the court cautioned against allowing trial courts to impose

unconventional conditions of supervision (730 ILCS 5/5--6--3.1(c)

(West 1994)), which may have unknown consequences. The defendant in

Johnson was convicted of driving under the influence of alcohol. As

a condition of supervision, the trial court in Johnson ordered the

defendant to place an advertisement in the local daily newspaper,

which contained her booking picture and an apology. The appellate

court vacated this condition, finding it to be inconsistent with

the overall intent of section 5--3--6.1. Johnson, 174 Ill. App. 3d

at 815.

     Specifically, the court in Johnson noted that none of the

listed, permissible conditions suggest subjecting the defendant to

ridicule. Rather, the court determined that the overall intent of

section 5--6--3.1 was to aid the defendant in rehabilitation and to

avoid future crimes. The court stated:

          "Neither the trial court *** nor this court can determine

          the psychological or psychiatric effect of the

          publication. An adverse effect upon the defendant would

          certainly be inconsistent with rehabilitation and with

          the statutory provision allowing the court to require

          psychological or psychiatric treatment." Johnson, 174

          Ill. App. 3d at 815.

     We are mindful of the distinctions in the case sub judice and

the Burdin and Johnson cases. However, we agree with the specially

concurring opinion in Johnson, which observed:

          "[T]o uphold the condition imposed here would encourage

          other courts to impose other unusual, dramatic

          conditions, and the proliferation of these types of

          conditions would cause problems of a greater magnitude

          than their propensity to rehabilitate." Johnson, 174 Ill.

          App. 3d at 817 (Green, P.J., specially concurring).

See also People v. Harris, 238 Ill. App. 3d 575 (1992) (banishing

the defendant from the state of Illinois as a condition of

probation was unreasonable because no valid purpose would be

served); People v. Letterlough, 86 N.Y.2d 259, 655 N.E.2d 146, 631

N.Y.S.2d 105 (1995) (condition of probation requiring the defendant

to affix a florescent sign reading "convicted dwi" to the license

plate of any vehicle he drove was not authorized); People v.

Hackler, 13 Cal. App. 4th 1049, 16 Cal. Rptr. 2d 681 (1993) (court

not authorized to require probationer to wear a T-shirt bearing

bold printed statement proclaiming his felony status); but see

Lindsay v. State, 606 So. 2d 652 (Fla. 1992) (condition of

probation requiring defendant to place a newspaper advertisement

showing a mug shot, name and caption "DUI-convicted" upheld under

Florida statute); Goldschmitt v. State, 490 So. 2d 123 (Fla. 1986)

(bumper sticker reading "CONVICTED D.U.I.--RESTRICTED LICENSE"

upheld); Ballenger v. State, 210 Ga. App. 627, 436 S.E.2d 793

(1993) (court had the authority to require the defendant to wear a

pink fluorescent bracelet reading "D.U.I. CONVICT").

     We hold that section 5--6--3(b) of the Code did not authorize

the trial court to require the sign as a condition of the

defendant's probation. The sign contains a strong element of public

humiliation or ridicule because it serves as a formal, public

announcement of the defendant's crime. Thus, the sign is

inconsistent with the conditions of probation listed in section 5--

6--3(b), none of which identify public notification or humiliation

as a permissible condition. Further, we determine that the sign may

have unpredictable or unintended consequences which may be

inconsistent with the rehabilitative purpose of probation.

     Finally, the nature and location of the sign are likely to

have an adverse effect on innocent individuals who may happen to

reside with the defendant. At the time of sentencing in this case,

the defendant's wife was living on the premises where the violent

felon sign was to be displayed. The defendant's elderly mother also

intended to live there. The record shows that the defendant has two

adult children who visit the farm, as well as young grandchildren.

We believe that the manner in which the sign affects others also

renders it an impermissible condition of probation.

     Conditions which label a defendant's person or property have

a stigmatizing effect and are considered shaming penalties. D.

Kahan, What Do Alternative Sanctions Mean? 63 U. Chi. L. Rev. 591

(1996); Comment, Sentenced to Wear the Scarlet Letter: Judicial

Innovations in Sentencing--Are They Constitutional? 93 Dick. L.

Rev. 759 (1989); Comment, The Modern Day Scarlet Letter: A Critical

Analysis of Modern Probation Conditions, 1989 Duke L.J. 1357

(1989). Although a probationer may experience a certain degree of

shame from a statutorily identified condition of probation, shame

is not the primary purpose of the enumerated conditions.

     The judicially developed condition in the case at bar does not

reflect present penological policies of this state as evidenced by

our Unified Code of Corrections. The authority to define and fix

punishment is a matter for the legislature. People v. Breen, 62

Ill. 2d 323, 327 (1976). The drastic departure from traditional

sentencing concepts utilized in this case is not contemplated by

our Code. Therefore, we determine that the erection of the sign as

a condition of probation was unreasonable, and may be

counterproductive to defendant's rehabilitative potential.

     For the above stated reasons, we conclude that the trial court

exceeded its authority and abused its discretion under section 5--

6--3(b) when it ordered the defendant to place the violent felon

sign at the entrance to his farm. This condition was not

reasonable. Because the sign has already been in place for more

than half the period of the defendant's probation, and in order

that the issue may not become moot by the further passage of time,

we hereby order that the disputed condition of probation is vacated

instanter.

     The judgment of the appellate court is reversed and the

judgment of the circuit court is affirmed in part and vacated in

part.

                                         Appellate court judgment reversed;

                                    circuit court judgment affirmed in part

                                                     and vacated in part.

                                                                         

     JUSTICE MILLER, concurring in part and dissenting in part:

     I agree with the majority's decision that requiring the

defendant to maintain a warning sign on his property was not an

appropriate condition of probation. Rather than simply leave

undisturbed the remainder of the defendant's sentence, however, I

would vacate the sentence and remand the cause to the circuit court

for a new sentencing hearing. The trial judge sentenced the

defendant in August 1995 to a 30-month term of probation. Because

of the amount of time remaining in that period--nearly a year--and

because we have now eliminated an important condition of that

disposition, I believe that the trial judge should have the

opportunity to reconsider the defendant's sentence in light of our

holding here, and with regard to the defendant's conduct since the

original hearing (see 730 ILCS 5/5--5--3(d) (West 1994)).

     CHIEF JUSTICE HEIPLE joins in this partial concurrence and

partial dissent.

     JUSTICE BILANDIC, also concurring in part and dissenting in

part:

     I agree with the majority that the provision of the sentence

requiring the erection of the sign was not reasonable. Rather than

just vacating that portion of the sentence, I would vacate the

entire sentence and remand to the circuit court for a new

sentencing hearing consistent with the views expressed in the

opinion.

     CHIEF JUSTICE HEIPLE joins in this partial concurrence and

partial dissent.