THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL FONTANA, Defendant-Appellant.

Second District   No. 2—91—1402

Opinion filed October 29, 1993.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Thomas F. Baker, of Lawky, Kukla & Curran, of Huntley (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

A jury found defendant, Daniel Fontana, guilty of the unlawful use of a credit card (Ill. Rev. Stat. 1991, ch. 17, par. 5921 (now 720 ILCS 250/8 (West 1992))). The trial court sentenced defendant to 30 months' probation, 30 days' in the county jail, restitution of $11,208.44, and costs. Defendant timely appealed, and he raises four issues for review: (1) whether the trial court erred in admitting evidence of other transactions by defendant and, if not, whether the lack of a limiting instruction for this evidence amounted to reversible error; (2) whether the trial court erred in sustaining the State's objections to defense counsel's questions regarding defendant's mental capacity; (3) whether the restitution included sums extraneous to the offenses, and whether the trial court erred in failing to determine the manner in which defendant was to pay the restitution; and (4) whether the victim's assistance fine of $20 imposed by the circuit court clerk must be vacated.

Defendant was charged with the unlawful use of a credit card based on two transactions: on December 15, 1990, defendant was alleged to have used the Visa credit card of Angeline Fontana for the purpose of obtaining the services of Dunn Rite Car and Truck Rental in the amount of $286.94; and on December 20, 1990, defendant was alleged to have used the Visa credit card of Anthony Fontana for the purpose of obtaining $100 cash from the Heritage Bank of Woodridge.

At trial, defendant's grandmother, Angeline Fontana, testified that she lived in North Riverside. On December 14, 1990, her husband Anthony died. Angeline had been at the hospital several days before

Anthony's death. She kept her Visa and Mastercard credit cards in a buffet in her dining room, because she seldom used those credit cards. Anthony kept his credit card in his wallet. Defendant's father had a key to Angeline and Anthony's home. Angeline did not give defendant permission to use or take the credit cards, and she was unaware that they were missing until she was contacted by the Harris Trust & Savings Bank (Harris Bank), the issuer. She never requested a new credit card or a change of address. On cross-examination, defense counsel asked Angeline if defendant had learning disabilities and what were defendant's mental capabilities. The State objected to both questions, and the court sustained the objections.

James Harding, an employee of Dunn Rite Car & Truck Rental (Dunn Rite), testified that on December 15, 1990, defendant rented a car from Dunn Rite. Harding asked for a credit card and a driver's license to rent the vehicle. Defendant produced his driver's license and gave his name. Defendant used a Visa card with the name "Angeline Fontana" on it to pay $286.94 for the rental. He signed the credit slip "Dan and F something."

Ann Marie Wilson, an employee of Heritage Bank, was in charge of bookkeeping and records in December 1990. She identified records of cash disbursements from a credit card. One was made on December 12, 1990, for $100, and Anthony's Visa card was used. The other transaction was on December 7. The jury was shown videotapes made by the bank's surveillance camera on December 7 and 20, 1990.

Detective Mitchell Vandenbos, of the Downers Grove police department, interviewed defendant on January 30, 1991, about defendant's use of his grandparents' credit cards. Vandenbos went through a copy of a Visa billing statement item by item, asking defendant to acknowledge which purchases he made. Vandenbos testified that defendant admitted to the Dunn Rite transaction. Defendant told Vandenbos that he rented a car because his was being repaired. When Vandenbos asked defendant if he had permission to use the credit cards, defendant admitted that he did not. Defendant also admitted that he took both credit cards from his grandparents' home. On cross-examination, defense counsel asked Vandenbos to describe defendant's mental capabilities, and the court sustained the State's objection to the question.

On January 3, 1991, defendant was interviewed at the Woodridge police department by Commander Edward Kelter and Detective William Sperling, in the presence of two Harris Bank employees. Defendant told the officers that he took the credit cards on December 3, 1990. Defendant admitted that he made the purchases listed on the billing statements provided by Harris Bank and that he did not have

authority to use the credit cards. Defendant told the officers that he requested a new credit card from the issuer and he had it mailed to a post office box in Oak Brook around December 20. Defendant admitted that he made the $1,000 transaction on December 7, 1990, without permission, and that he made the $100 transaction on December 20, 1990, to see if that card "would work." Defendant gave the officers two of the credit cards immediately, a Mastercard with Angeline's name on it and a Visa with Anthony's name on it. Defendant returned later with another credit card. Defendant made a written statement in the form of a letter of apology to Harris Bank, which stated:

> "I just wanted to say I was sorry for ussing [sic] my grandmother's credit cards and charging so much money on her acct. [sic] and making Harris bank go through all this stuff. When I see a credit card I just go crazzy [sic] with it not thinking what I'm doing. Also somehow I'll try to pay this back to Harris bank."

According to Commander Kelter, the officers offered defendant the "opportunity to make a written statement or a letter of apology or any other format in writing that he wanted to in his own words to explain what occurred." Kelter testified that he could not recall who initiated the request, nor could he recall whose idea it was to make the statement a letter of apology to Harris Bank. Kelter denied that it was his idea to make it an apology or that he directed defendant what to write. Again, on cross-examination, defense counsel attempted to question Kelter about defendant's mental capabilities, and the court sustained the State's objections.

After Kelter's testimony, during a side-bar discussion, the prosecutor mentioned some business records in the form of billing statements that the State intended to introduce. Defendant objected to the introduction of the billing statements because they contained other matters which were not the subject of the charges at issue. The prosecutor responded that the billing statements were relevant because Vandenbos and Kelter testified that they went through the documents with defendant and he indicated that he did not have authority to make several of the charges. Defense counsel then admitted that there was no issue of authorization or permission to use the cards, but the issue was whether defendant had the intent to defraud. Defense counsel was concerned that the billing statements were duplicative. The court then explained:

> "You started off talking about intent to defraud and then you are talking about duplicative evidence. It is discretionary with

the Court to allow something additional to what has been already offered, and I don't see a problem there.

The other, more serious problem is the question of proof of other crime, and the question of intent is the issue to be decided in the case, intent to defraud. And there had been testimony that there was no authority given by Mrs. Fontana, the grandmother, to the defendant to use the credit card.

And where the defendant denied any intent to defraud, I think evidence of other use of the card and other purchases with the use of that card without having been given permission by the cardholder to do so is probative on the issue on the intent to defraud."

The court allowed the State to introduce the billing statements into evidence.

Detective Sperling's testimony was essentially the same as Kelter's testimony. When the prosecutor asked Sperling if the police questioned defendant about a transaction for an engagement ring, defendant objected on the basis of an insufficient foundation. Sperling was allowed to testify that defendant stated that he used the credit card to purchase a wedding ring set from a jeweler in Schaumburg. Defendant gave the ring set to his fiancee. On January 7, 1991, defendant returned to the police station and gave Sperling the wedding band, but the fiancee refused to return the engagement ring. Sperling identified a photograph he took of the wedding band that defendant brought to the police station.

Sperling further testified that Kelter gave defendant a pad of paper and a pen and requested that defendant make a statement. On cross-examination, Sperling stated that it was Kelter who chose to direct the letter to Harris Bank and that Kelter stated that it was a letter of apology. As with the questioning of the other witnesses, the court sustained the State's objection to defense counsel's question about defendant's mental capabilities.

Larry Herrmann, a senior bank card agent for Harris Bank, testified that on December 13, 1990, the Fontanas' Visa card was reported stolen. Harris Bank closed the account that day and issued a new card with a new account number. According to Herrmann, normally it takes three days for Harris Bank to send a new card after a card is reported stolen. The new Visa card was sent to an address in Oak Brook on December 17.

Herrmann further testified that he was present at the interview of defendant at the Woodridge police department on January 3, 1991. Herrmann brought records of the sales that were transmitted on the

stolen card and the new card. Defendant stated that he did not have permission to use the Visa card on December 7 and 20 at the Heritage Bank, or on December 15 at Dunn Rite. Herrmann identified the billing statements which listed those purchases and the purchase of the engagement ring. All of the billing statements were sent to Post Office Box 1423, Oak Brook, Illinois, except for the billing statement which listed the Dunn Rite transaction. Harris Bank retained that billing statement because the transaction occurred after the account was closed and before the new card was issued. Herrmann stated that when there has been an unauthorized use of a credit card issued by Harris Bank, Harris Bank pays for all the charges. Harris Bank paid for the unauthorized charges to the Fontanas' account.

At the close of the State's case, the prosecutor sought to introduce into evidence the documents, the photograph of the ring, and the credit cards. Defendant did not object to the photograph, but objected to the billing statements which listed other transactions. The court permitted the State to allow the jury to see the billing statements after the State "whited out" all the transactions except those to which the witnesses testified. Defendant did not object to the billing statement which listed the $1,000 transaction of December 7 and the $1,204 transaction with the jeweler. Defendant presented no evidence. During the instructions conference, the State offered an instruction which admonished the jurors that evidence admitted for a limited purpose may not be admitted for any other purpose. However, defendant did not request a limiting instruction for other crimes evidence, nor did the State or the court offer one.

In the post-trial motion, defendant raised the issues of the other crimes evidence and the limitation on the cross-examination about defendant's mental capabilities. In denying the post-trial motion, the court found that the error in failing to give the limiting instruction was harmless because the evidence of defendant's guilt was overwhelming.

On appeal, defendant first contends that the court erred in admitting the evidence of the $1,000 transaction and the jewelry store transaction and that, in any event, it was error to admit the evidence without giving the jury a limiting instruction restricting its use. The State argues that defendant waived this issue by failing to object to the introduction of the evidence at trial on this basis. To preserve an issue for appeal, a defendant must both object at trial and include the issue in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Although defendant objected to the evidence on the basis that it lacked a foundation and that it was cumulative, he did not

object to the admission of the evidence on the ground that it was impermissible other crimes evidence. A defendant must specify the grounds for the objection that he wishes to raise on appeal. (*People v. Lucas* (1992), 151 Ill. 2d 461, 481.) Thus, defendant has waived this issue. However, even if defendant had preserved the issue, it is without merit.

■ Evidence of other offenses committed by the defendant is inadmissible if offered solely to show the defendant's propensity to commit crime. (*People v. Speight* (1992), 153 Ill. 2d 365, 372.) Evidence of other offenses is admissible if it is relevant for any other purpose, such as to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364-65.) Even where the evidence of other offenses is relevant, the evidence should not be admitted if its prejudicial effect substantially outweighs its probative value. (*Illgen*, 145 Ill. 2d at 365.) As the trial court found, the evidence of the other transactions was relevant to prove defendant's intent to defraud. Thus, the trial court properly admitted the evidence. Further, our review of the record leads us to reject defendant's contention that the detail of the evidence in question exceeded the scope of that authorized under the other crimes exception. It is noted that the trial court excised a number of transactions relating to the use of the credit card.

Defendant argues that it was error for the court to admit the evidence without a limiting instruction. Defendant, however, failed to request a jury instruction on the limited use of the other crimes evidence. The State asserts that this failure waives the issue for review. The trial court is not obligated to give a limiting instruction *sua sponte*, and the defendant's failure to tender such an instruction waives any objection concerning its absence. *People v. Musitief* (1990), 201 Ill. App. 3d 872, 877.

■ Defendant requests that we consider this issue under the plain error doctrine. (See 134 Ill. 2d R. 615(a).) A court will consider a matter as plain error if the alleged error was of such magnitude that it deprived the defendant of a fair trial, or if the evidence was closely balanced. (*People v. Mitchell* (1993), 155 Ill. 2d 344, 354.) As for the first part of this test, generally, grave error occurs when the court fails to instruct the jury on the elements of the crime charged, the presumption of innocence and the burden of proof. (*People v. Pasch* (1992), 152 Ill. 2d 133, 171; *People v. Berry* (1991), 244 Ill. App. 3d 14, 28.) Defendant's reliance on *People v. Thurman* (1984), 104 Ill. 2d 326, 330-31, and *People v. Berry* (1984), 99 Ill. 2d 499, 504-06, is misplaced because the error in both cases concerned the omission of an

instruction on an element of the offense, which, under the factual circumstances, amounted to grave error. As the instruction here does not concern any of these fundamental matters, we will not consider any error to be of such magnitude as to constitute grave error. See *Musitief*, 201 Ill. App. 3d at 877-78.

As for the second part of the test, we agree with the trial court that the evidence of defendant's guilt was overwhelming. Defendant admitted to three police officers and two bank employees that he did not have authority to use the credit cards; Anthony Fontana's credit card was used after his death; and a new credit card was sent to a post office box, both of which defendant admitted that he used. We conclude that the trial court did not abuse its discretion in admitting the evidence of the two extraneous transactions, and we decline to address any error in the failure to give a limiting instruction under the plain error doctrine.

Defendant next contends that the trial court erred in sustaining objections to defense counsel's questions on cross-examination relating to defendant's mental capacity. He cites specifically questions asked during counsel's cross-examination of Angeline Fontana and Officers Kelter, Vandenbos, and Sperling. Defendant alludes to the principle that lay witnesses are, under certain circumstances, permitted to express an opinion on a person's mental condition based upon having observed the person. He argues that such opinions would have been relevant to the issues of whether defendant was capable of forming the requisite intent to defraud, and what weight should have been accorded his statements to authorities.

The trial court has discretion to limit the scope of cross-examination. We may not disturb a trial court's ruling in that regard unless there had been an abuse of discretion resulting in clear prejudice to the defendant. *People v. Patterson* (1992), 154 Ill. 2d 414, 463.

■ The court may exercise its discretion to confine the extent of cross-examination to the proper subject matter. (*People v. Davis* (1990), 193 Ill. App. 3d 1001, 1004.) "The proper scope of cross-examination extends to matters raised on direct examination, including all matters which explain, qualify, or destroy the testimony on direct examination." (*People v. McCarthy* (1991), 213 Ill. App. 3d 873, 883.) The court may bar cross-examination where there is no proof as to the competency or the relevancy of the evidence, or where the offer in that regard is unsatisfactory. (*People v. Rice* (1992), 234 Ill. App. 3d 12, 20.) The trial court sustained the State's objections to defense counsel's attempt to question defendant's grandmother, Angeline Fontana, concerning whether defendant suffered from any learning dis-

abilities and whether she would describe defendant as "slow." We note that defendant presented no evidence in the trial and there is no indication that the defense of insanity was ever an issue. Consequently, aside from the questions being beyond the scope of Mrs. Fontana's direct testimony, there was no basis for the trial court to permit the question as relevant to any defense of insanity. Moreover, because this witness' testimony preceded any testimony relating to defendant's statements to authorities, there was no reason for the court to have perceived the question as bearing upon the weight to be accorded his admissions. Defense counsel made no offer to alert the court to the possible relevance of the proposed inquiry to the circumstances of defendant's interrogation. The objection was properly sustained.

Defendant argues that he was improperly prevented from asking Officer Vandenbos about his knowledge of defendant's "mental aptitude" and whether defendant appeared to be a person with a "learning disability." We note, however, that defendant was permitted to ask Vandenbos, "Were there any difficulties or did you notice any difficulty in the defendant understanding what you were asking him?" We consider the form of this question to have been more appropriate under the circumstances of this cross-examination. In any event, the question and the witness' negative response to it render the trial court's rejection of the "mental aptitude" and "learning disability" questions inconsequential.

Defendant further cites as error the trial court's sustaining an objection to defense counsel's question of Officer Kelter, "What if anything did you notice about [defendant's] mental faculties?" The trial court's explanation of the ruling appears to reflect its concern with the form of the question. Although defense counsel had been permitted in his examination of the preceding witness (Vandenbos) to explore the subject of defendant's general ability to understand questions, counsel made no effort to rephrase his "mental faculties" question of Kelter. In our view the trial court committed no error in this regard.

In his cross-examination of Officer Sperling, defense counsel asked, "Mr. Fontana has a learning disability?" The trial court sustained the State's objection, commenting that the witness had no expertise in that field. We agree with that ruling. Moreover, defense counsel's question may also be interpreted as implying that counsel was in possession of other evidence to establish the existence of a learning disability. As noted, the defense presented no witnesses and no proof of a learning disability was ever received. No motion to sup-

press defendant's statements was filed by the defense. It is improper for counsel to assume the existence of a fact in his question which is neither based on evidence nor likely to be presented as evidence. (*People v. Payton* (1967), 82 Ill. App. 2d 51, 57; *People v. Shipp* (1977), 52 Ill. App. 3d 470, 474-75.) We conclude that the court did not abuse its discretion in limiting the cross-examination.

The remaining two issues concern defendant's sentence. At the sentencing hearing, the State requested that the court order defendant to make full restitution of the entire amount that Harris Bank paid because of defendant's unauthorized transactions, which amount, according to the prosecution, was $11,208.44. Defendant argued that he did not earn enough money to make full restitution. In imposing the sentence, the court indicated that it was not concerned with defendant's ability to pay, and it ordered defendant to pay restitution of approximately $11,000 over a period of five years. Defense counsel then remarked:

> "Judge, I don't know what the exact amount is. I don't know if they all fall within the jurisdiction of this Court with respect to transactions that may have occurred in other counties and/or that they were strictly here in Du Page County; so even though I disagree with your Honor, with all due respect, to the ordering of restitution without a hearing or some sort of showing that the defendant is going to be paid this amount of money for the next five years, I think clearly that if there's any amount that occurred outside of Du Page County, that certainly *** shouldn't be the basis of an order in this case."

The court suggested that defendant "come in on a hearing of some kind on that," but defendant instead appealed. A form from the circuit court clerk's office listed the amount of fines and costs imposed on defendant. The deputy clerk assessed a fine of $20 for "Victim Assistance."

Defendant contends that the court erred in ordering restitution for sums which were extraneous to the charges at issue and in failing to determine the manner in which defendant was to pay the restitution. The State responds that defendant waived this issue by failing to move to reconsider his sentence.

The failure to file a motion to reconsider the sentence waives the sentencing issue for review, even if the defendant is challenging only a fine or restitution. (*People v. Albert* (1993), 243 Ill. App. 3d 23, 28; see also *People v. Pfister* (1993), 240 Ill. App. 3d 931, 936.) However, the waiver rule is binding only on the parties, and this court may re-

view an issue in the interests of justice. *People v. Wilson* (1993), 155 Ill. 2d 374, 379.

As part of the sentence, the trial court may order a defendant to make restitution for losses proximately caused by his conduct. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(a) (now codified, as amended, at 730 ILCS 5/5—5—6(a) (West 1992)).) Defendant asserts that the trial court does not have authority to order restitution for damages resulting from criminal conduct which is not charged in the indictment. Defendant relies on *People v. Mahle* (1974), 57 Ill. 2d 279, in which the supreme court held that restitution may not extend to "matters unrelated to the charges before the court," and that the trial court there lacked authority to order restitution of sums extraneous to the charges at issue. *Mahle*, 57 Ill. 2d at 284.

The State responds that *Mahle* is inapposite because the legislature amended the statute in 1983, after *Mahle* was decided. The version of the statute at issue in *Mahle* provided that, as a condition of probation, the court could require the defendant to "make restitution or reparation in an amount not to exceed actual loss or damage to property and pecuniary loss." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b)(10).) Section 5—5—6(b) of the Unified Code of Corrections (Code) now provides in relevant part:

> "In fixing the amount of restitution to be paid in cash, *** the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, or injuries proximately caused by the same criminal conduct of the defendant, and insurance carriers who have indemnified the named victim or other victims for the out-of-pocket expenses, losses, damages and injuries, provided that in no event shall restitution be ordered to be paid on account of pain and suffering." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(b) (now codified, as amended, at 730 ILCS 5/5—5—6(b) (West 1992)).)

The 1983 amendment was designed to expand the coverage of the restitution statute. (*People v. Gray* (1992), 234 Ill. App. 3d 441, 443.) As the court in *People v. Strebin* (1991), 209 Ill. App. 3d 1078, stated:

> "We view Public Act 83—1061 (Pub. Act 83—1061, eff. July 1, 1984 (1983 Ill. Laws 7226)) as a comprehensive change in the law governing restitution, reflective of an intention by the Illinois General Assembly, in every criminal case where possible, to achieve two goals: (1) to make victims whole for *any* injury received at the hands of the criminal to be sentenced; and (2) to

make criminals pay *all* of the costs which arise as a result of injuries the victims suffered." (Emphasis in original.) *Strebin*, 209 Ill. App. 3d at 1084.

See also *People v. Lowe* (1992), 153 Ill. 2d 195, 202, citing *Strebin*, 209 Ill. App. 3d at 1084.

A defendant may be ordered to make restitution if the losses sustained "were proximately caused by the same criminal conduct of the defendant as that of which he was convicted." (*People v. Nicholl* (1991), 210 Ill. App. 3d 1001, 1013.) The court may order restitution for losses incurred by the same victim as the result of the same criminal conduct of the defendant, even if those losses were not set forth in the charging instrument. (*People v. Early* (1987), 158 Ill. App. 3d 232, 239.) However, restitution is improper for matters unrelated to the charges at issue. *Nicholl*, 210 Ill. App. 3d at 1013.

All of the transactions in which defendant used the Fontanas' credit cards were related to the charge at issue and were the same criminal conduct as that of which defendant was convicted. The essence of the offense with which defendant was charged was that defendant used a credit card without consent, and the value of the money, goods or services obtained exceeded $300 in a six-month period. (Ill. Rev. Stat. 1991, ch. 17, par. 5921 (now 720 ILCS 250/8 (West 1992)).) Section 8 of the Illinois Credit Card and Debit Card Act states, in part:

"A person who, with intent to defraud either the issuer, or a person providing money, goods, property, services or anything else of value *** uses *** a credit card or debit card obtained or retained in violation of this Act or without the cardholder's consent *** is guilty of a Class A misdemeanor if the value of all money, goods, property, services and other things of value obtained *** does not exceed $300 in any 6-month period; and is guilty of a Class 4 felony if such value exceeds $300 in any 6-month period." (Ill. Rev. Stat. 1991, ch. 17, par. 5921 (now 720 ILCS 250/8 (West 1992)).)

The language "uses" a credit card in conjunction with the language "exceeds $300 in any 6-month period" indicates that one offense may consist of more than one transaction. We conclude that the crime of unauthorized use of a credit card may include more than one transaction as part of the offense. For this particular offense, all of the transactions, which occurred within a one-month period and involved credit cards issued by one bank to the same individuals, were related to the same offense.

Defendant's reliance on *People v. Thompson* (1990), 200 Ill. App. 3d 23, is misplaced. In *Thompson*, the defendant was charged with and convicted of failing to file tax returns for three years. The trial court ordered the defendant to pay restitution for three additional years in which he did not file a return. The reviewing court concluded that the defendant could be ordered to make restitution only for the amount owed as a result of the charges at issue. (*Thompson*, 200 Ill. App. 3d at 26.) *Thompson* is distinguishable because each failure to file a tax return is a separate offense. (See Ill. Rev. Stat. 1987, ch. 120, par. 12—1301 (now 35 ILCS 5/1301 (West 1992)).) Similarly, defendant's reliance on *People v. Bradford* (1991), 207 Ill. App. 3d 436, is also misplaced. The defendant in *Bradford* was convicted of forgery, and, under that statute, each forgery is a separate offense. Ill. Rev. Stat. 1987, ch. 38, par. 17—3(a) (now 720 ILCS 5/17—3(a) (West 1992)); see also *Bradford*, 207 Ill. App. 3d at 438.

We agree with the State that *People v. Ensley* (1985), 132 Ill. App. 3d 842, is applicable. The defendant in *Ensley* was charged with stealing 7 items, but 19 items were stolen. The court concluded that because all the items were taken as part of the same offense involving the same victim, the property was related and restitution for the entire amount was proper. (*Ensley*, 132 Ill. App. 3d at 844.) Here, although defendant was charged with only two specific transactions, all the transactions were part of the same continuing offense involving the same victim. This constitutes "the same criminal conduct" within the meaning of section 5—5—6 of the Code.

Furthermore, we agree with the State that defendant's interpretation of the statute is too narrow. The primary object of statutory construction, which begins with the statutory language itself, is to give effect to the legislative intent. (*People v. Lowe* (1992), 153 Ill. 2d 195, 201.) The Criminal Code of 1961 defines the term "conduct" as "an act or a series of acts, and the accompanying mental state." (720 ILCS 5/2—4 (West 1992).) The court should also consider the purpose of the enactment. As noted above, the purpose of section 5—5—6(b) is to make victims whole for any injury received at the hands of the defendant (*Lowe*, 153 Ill. 2d at 202), and to make the defendant pay for all of the damages he caused to the victim (*Strebin*, 209 Ill. App. 3d 1078). In view of these legislative goals and the statutory definition, we believe that the phrase "same criminal conduct" should be construed broadly to effect the remedial purpose of the statute (see *Strebin*, 209 Ill. App. 3d at 1085) so that it includes uncharged but related offenses based on a series of acts with the same mental state affecting the same victim.

■ Moreover, had the legislature intended that the amount of restitution be limited to only those charges set forth in the charging instrument, it would have used the term "same charges" instead of "same criminal conduct." We conclude that a defendant may, under these circumstances, be ordered to make restitution for uncharged but related offenses if his criminal conduct caused damage to the same victim, and the restitution is necessary to make the victim whole. We read subsection (d) of section 5—5—6, which governs agreements for restitution as part of plea agreements, to provide for restitution for unrelated offenses. (See 730 ILCS 5/5—5—6(d) (West 1992).) Our interpretation of subsection (b) does not render the provisions of subsection (d) meaningless. (See *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111.) (We further note that the evidence must establish that the defendant's conduct proximately caused the damages or losses (see *People v. Hernandez* (1992), 236 Ill. App. 3d 983, 985-86; *People v. Chapin* (1992), 233 Ill. App. 3d 28, 34), and there must be evidence in the presentence report to establish the amount (*Lowe*, 153 Ill. 2d at 206-07).) For the above-stated reasons, the trial court did not abuse its discretion in setting the amount of restitution.

■ Defendant further argues that restitution to Harris Bank was not proper because Harris Bank was not a victim of a crime of violence. Our supreme court recently held that section 5—5—6 applies to victims of both violent and nonviolent crimes. (*Lowe*, 153 Ill. 2d at 204.) Defendant's argument is therefore without merit.

Defendant next argues that the cause must be remanded for the trial court to determine defendant's ability to pay the restitution and for the court to determine the manner and time of the payments.

■ The trial court must determine a reasonable time and manner for the payment of restitution to insure that restitution can be paid. (*People v. Fuzz* (1991), 218 Ill. App. 3d 418, 422.) However, the trial court is not required to consider a defendant's financial circumstances when setting the amount of restitution; the trial court is only required to consider the ability to pay when determining the time and manner of payment or when considering a petition to revoke restitution. (*People v. Gray* (1992), 234 Ill. App. 3d 441, 444; Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—6(f), (i) (now codified, as amended, at 730 ILCS 5/5—5—6(f), (i) (West 1992)).) "[T]he court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years within which payment of restitution is to be paid in full." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f) (now codified, as amended, at 730 ILCS 5/5—5—6(f)

(West 1992)).) Although the trial court did fix the time period at five years, it failed to specify whether the payment would be in installments or a lump sum. We therefore agree with defendant that the cause must be remanded to the trial court for a determination of the method and manner of payment, taking into account defendant's financial circumstances.

■ Finally, defendant contends that the Violent Crime Victim's Assistance Fund fine imposed by the circuit court clerk must be vacated, since the imposition of a fine is a judicial act which can be performed only by a judge. The State concedes error. We therefore vacate the fine and direct the trial court to impose the fine. See *People v. Wisotzke* (1990), 204 Ill. App. 3d 44, 50.

The judgment of the circuit court is affirmed in part and vacated in part, and the cause is remanded.

Affirmed in part; vacated in part and remanded.

INGLIS, P.J., and COLWELL, J., concur.