NOTICE

Decision filed 06/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220831-U

NO. 5-22-0831

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-1197 |
| | ) | |
| ROBERT F. O'MALLEY, | ) | Honorable |
| | ) | Ronda D. Holliman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore* concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The trial court did not consider improper evidence in sentencing the defendant, and the court did not err in determining that restitution was an appropriate part of the defendant's sentence where the evidence showed that the victim's financial loss was proximately caused by the same criminal conduct for which the defendant was convicted. The trial court did not comply with the statutory requirement to set forth the time limit and manner for full payment of restitution. The cause is remanded to the trial court with directions to determine and set forth a reasonable time limit and terms for the payment of restitution, taking into consideration the defendant's ability to pay. In all other respects, the judgment and sentence are affirmed. Mandate to issue immediately.

¶ 2     The defendant, Robert F. O'Malley, entered a guilty plea to the charge of leaving the scene of a motor vehicle accident involving the death of a person. The defendant was sentenced to 12

---

*This case was originally assigned to Justice Welch. For administrative reasons Justice Moore has been substituted on the panel for Justice Welch. Justice Moore has read the briefs in this case and has listened to the recording of oral argument.

years in prison, followed by one year of mandatory supervised release, and he was ordered to pay $50,000 in restitution, plus fines, fees, and costs. Pursuant to an agreed order, the defendant was also directed to forfeit specific firearms and ammunition found within the defendant's possession. On appeal, the defendant claims that the trial court erred in ordering restitution because the victim's financial loss was not proximately caused by criminal conduct for which the defendant was convicted and because the financial loss was not an out-of-pocket expense. Alternatively, the defendant claims the trial court did not determine the specific manner of payment, with consideration for his ability to pay. The defendant also claims that the trial court relied upon an improper factor in imposing the 12-year prison term.

¶ 3                                    I. BACKGROUND

¶ 4      On October 11, 2020, William Schuh was cycling with his daughter, Sarah, and his wife, Kimberly, westbound on U.S. Route 150, in Mahomet, Illinois. At that time, a motor vehicle, also traveling westbound on Route 150, struck the rear tire of William's bicycle. William was thrown from his bicycle, and he landed in a roadside ditch. William sustained serious injuries to his head and body. He was transported to a hospital where he died from his injuries. Sarah was hit by the vehicle's side mirror. She sustained minor injuries to her left buttocks. The driver of the vehicle did not stop. Two motorists came upon the scene shortly after the incident. Kimberly and Sarah told them that a white truck with a trailer passed them just after William was struck. The Illinois State Police were called to investigate the incident.

¶ 5      On October 22, 2020, the defendant was charged by information[1] with leaving the scene of a personal injury accident resulting in death, a Class 1 felony (625 ILCS 5/11-401(b) (West

[1]In the original information, filed October 22, 2020, Robert F. O'Malley was the named defendant in the caption of the pleading, but a different individual was named as defendant in the body of the pleading. The error was corrected in an amended information filed on October 23, 2020.

2020)). The State alleged that on October 11, 2020, the defendant drove a motor vehicle in Champaign County and was involved in a motor vehicle accident that resulted in the death of William Schuh. The State further alleged that the defendant "failed to immediately stop his vehicle and remain at the scene until he complied with requirements of 625 ILCS 5/11-403, and then further failed to report the accident at a police station or sheriff's office as soon as possible" in violation of section 11-401(b) of the Illinois Vehicle Code (625 ILCS 5/11-401(b) (West 2020)).

¶ 6 During discovery, the defendant produced a report prepared by Roger Barrette, an expert in accident reconstruction. Barrette reviewed the Illinois State Police investigative files, witnesses' statements, photographs, and diagrams of the accident scene. He also conducted his own inspection of the site. After reviewing the information, Barrette concluded that there was evidence of two collisions. The initial collision occurred when the front side of a white truck with trailer, which was traveling west on Route 150, struck the rear wheel of the decedent's bicycle. The side mirror of the truck then struck Sarah. A second collision occurred when the defendant attempted to pass the white truck just as the truck crossed into the eastbound lane of Route 150. The front passenger side of the defendant's vehicle struck the left rear of the trailer. The defendant's vehicle sustained damage, including the detachment of the passenger side mirror and part of the front bumper. Barrette concluded this evidence created reasonable doubt that the defendant's vehicle struck the decedent and his daughter. Barrette's opinions and conclusions were based, in part, upon the location of damage to the defendant's vehicle, the mechanism of the decedent's injuries, the debris field, and the excited utterances by Kimberly Schuh and Sarah Schuh, who reported that a white truck with a trailer had passed them at or just after impact.

¶ 7 The State filed a motion *in limine* to exclude the defendant from presenting any evidence or argument "relating to the cause or circumstances of the accident." Citing section 11-401 of the

Illinois Vehicle Code (625 ILCS 5/11-401 (West 2020)), the State noted that a person commits the offense of leaving the scene of an accident involving death or personal injury when the person is "the driver of a vehicle involved in a motor vehicle accident" resulting in personal injury to or death of any person. The State argued that it only needed to show that the defendant was "involved in" the accident, and not that the defendant was the cause of, or at fault for, the accident. The State further argued that a person could be involved in an accident without being a legal or proximate cause of the accident. The State concluded that because causation was not an element of the charged offense, any testimony or evidence regarding the cause or circumstances of the accident was irrelevant. The State filed a separate motion *in limine* to exclude the testimony of the defendant's expert. The State argued that cause was not an element of the offense or a fact in issue. Therefore, the testimony of the defendant's expert should not be admitted because it would not assist the trier of fact in deciding a fact in issue. In response, the defendant argued that the expert testimony and other evidence that another vehicle struck the cyclists was admissible to show that there were two separate accidents, and that the defendant was not substantially implicated in the collision that resulted in the decedent's death.

¶ 8    Following a hearing on November 2, 2021, the trial court barred the defendant from presenting any testimony or argument regarding the cause of the accident, but reserved ruling on the State's motion to bar other testimony by the defendant's expert. In its oral pronouncement, the court reasoned that causation or proximate cause was not an issue in the case.

¶ 9    On February 1, 2022, the defendant entered a plea of guilty to leaving the scene of a personal injury accident resulting in death. Before accepting the defendant's plea, the trial court asked the State to provide the factual basis for the plea. The State provided a recitation of the basic facts. On October 11, 2020, at approximately 4:20 p.m., William Schuh, his wife, Kimberly, and

4

his daughter Sarah, were cycling westbound on Route 150, near County Road 125. A vehicle struck the rear tire of William's bicycle. William's body hit the vehicle and then landed in a ditch. William suffered serious head injuries. He was transported to Carle Hospital, where he later died from his injuries. William's daughter, Sarah, was struck by the same vehicle. She sustained soft tissue injuries to her left buttocks, and the bruises were consistent with an impact from a vehicle's passenger side mirror. The driver of the subject vehicle did not stop. Chris Shoaf, a post-occurrence witness, came upon the scene shortly after the incident. Shoaf was expected to testify that he observed a "chunk of bumper of a white vehicle" and a side mirror in the roadway. He stopped and moved those parts off the roadway. Subsequently, Illinois State Police investigators examined the side mirror and identified part numbers that corresponded to Ford Mustang vehicles with model years between 2010 and 2014.

¶ 10    Roger Jackson and his wife, Alice Jackson, also came upon the scene after the accident. Roger was expected to testify that he was driving east on Route 150, approaching the accident scene, when a white Mustang with a blue stripe drove past him in the westbound lane of Route 150. Alice would testify that she was following Roger in her own vehicle, and that she stopped at the accident scene. While Alice was assisting Kimberly Schuh, she noticed that a white Mustang with a blue stripe had stopped on the side of the road. She saw the driver exit the vehicle. Alice identified him as the defendant. She recognized him because he was a bartender at a local restaurant. Alice spoke with the defendant. She informed him that there was a crash, and that people thought that a truck was involved. The defendant returned to his vehicle and drove west on Route 150, away from the scene.

¶ 11    Jason Eddings and Jeffrey Orwick were friends of the defendant. They were expected to testify that the defendant called them on the day of the accident. The defendant indicated that he

was at his father's property in Farmer City, that his car would not start, and that he needed a ride. Eddings and Orwick drove to the property to give the defendant a ride. As they drove away, the defendant indicated that he did not want to drive past the site of the accident. Another friend, Eric Gleason, was expected to testify that days after the accident, the defendant came to Gleason's home to talk. During the visit, the defendant "confessed" that he struck an individual on a bicycle and that the individual later died from his injuries. Gleason encouraged the defendant to go to the police. The defendant ended the conversation and left Gleason's home. Gleason then notified the sheriff's department about his conversation with the defendant.

¶ 12    The Illinois State Police obtained a warrant to search the property in Farmer City, Illinois. During the search, officers discovered a white Mustang, with a blue stripe, parked inside a garage. The passenger side mirror and part of the front bumper were missing. Scrapings taken from the damaged parts of the defendant's vehicle were analyzed and found to contain DNA consistent with the decedent's skin cells.

¶ 13    At the conclusion of the State's presentation, the defendant's attorney acknowledged that the State's witnesses would testify substantially as indicated in the proffer. The trial court admonished the defendant about the consequences of his guilty plea. The court then accepted the defendant's plea, finding that the plea was knowingly and voluntarily made and that there was a factual basis for it.

¶ 14    The parties appeared for a sentencing hearing on March 23, 2022. During the hearing, the State called Master Sergeant Chad Dumonceaux, an Illinois State Police officer, to offer evidence regarding the factors in aggravation. Sergeant Dumonceaux supervised the Illinois State Police investigation into the October 11, 2020, incident, and he recounted the evidence that led to the defendant's arrest. Illinois State Police investigators were dispatched to the hospital to interview

Kimberly Schuh and Sarah Schuh. Both Kimberly and Sarah told investigators that they thought that a semi or large truck struck the decedent and Sarah. Investigators went to the crash site but found no evidence pointing to a truck.

¶ 15    Dumonceaux testified that an examination of part numbers from the vehicle parts collected at the crash site revealed that the parts were from a white Ford Mustang with a model year between 2010 and 2014. Investigators conducted video canvassing and contacted autobody repair shops in an attempt to locate the vehicle. Based upon the information in the statements given by Roger Jackson, Alley Jackson, and Eric Gleason, Illinois State Police investigators obtained a search warrant for the property in Farmer City. Investigators had learned that the defendant's father, Robert O'Malley Sr., had owned the property, and that the property had been held in trust for the defendant after the death of O'Malley Sr., in the prior year. During a search of the property, officers discovered a white Mustang, with a blue stripe, parked in a garage. They observed damage to the vehicle's right front quarter panel. The passenger side mirror and a portion of the front bumper were missing. The missing pieces were consistent with the vehicle parts found in the roadway at the crash site. Officers also found approximately 500 grams of raw cannabis stored in eight glass jars, along with plant stems and plant debris. Two growing marijuana plants were found in an office adjacent to the garage, along with one plant that appeared to be hanging upside down to dry. Dumonceaux described the office as "almost a living area, with a couch and desk and a bathroom right off that area." Officers noted that a pillow and blanket were on the couch, and a drink was next to it. Four unsecured firearms and ammunition were located on the floor near the couch. There were two locked safes in the office area and another in the garage. Officers knew that the defendant's father had a firearm owner's identification card (FOID card), and that the defendant did not have a FOID card. The unsecured weapons and ammunition were seized, and the safes

7

were removed from the property as a precaution. Subsequently, the Illinois State Police obtained search warrants for the safes. Twenty firearms and additional rounds of ammunition were discovered inside the safes.

¶ 16    As additional evidence in support of factors in aggravation, the State asked the court to take judicial notice of the search warrant files pertaining to the investigation and the defendant's prior conviction for felony theft. The State also presented the victim's impact statements from Kimberly Schuh and Sarah Schuh.

¶ 17    The defendant's mother, Patricia Reese, provided testimony in mitigation. Reese explained that the defendant's father, O'Malley Sr., owned the Farmer City property that the police searched. After O'Malley Sr. died, the property was held in trust for the defendant and his children. Patricia Reese testified that the defendant only stayed at the property while O'Malley Sr. was alive. She recalled that O'Malley Sr. was an avid collector of firearms and ammunition. She also testified that the defendant was a compassionate and kind person and the devoted father of a 12-year-old son and a 14-year-old daughter. The defendant's stepfather, Lance Reese, also testified about the defendant's compassion and generosity.

¶ 18    Both parties offered evidence regarding restitution. The State offered a letter addressed to the state's attorney from a law firm that represented William Schuh's estate. The letter generally indicated that the firm assisted with "legal, tax, and related matters" that arose as a result of the decedent's passing. The letter also indicated that Kimberly Schuh had incurred $35,000 in attorney fees and that final fees would exceed $50,000. The letter did not include an itemized accounting of the law firm's work and its hourly rates. The letter was admitted without objection. The defendant offered an email from another law firm indicating that a wrongful death claim on behalf of the decedent's estate was pending, and that the defendant and the estate had reached an

8

agreement to settle the case for the sum of $500,000. Under the proposed distribution of settlement funds, Sarah Schuh would receive $500, Kimberly Schuh would personally receive $249,500, and the remaining $250,000 would be distributed to Kimberly Schuh, as executor of the decedent's estate. The parties agreed that the proposed settlement was in the process of being finalized.

¶ 19 At the close of the evidence, the State recommended a 15-year prison sentence, followed by a term of mandatory supervised release, $50,000 in restitution, along with fines and costs, and an order for forfeiture of the weapons and ammunition that had been seized from the Farmer City property. The State argued that the decedent was struck by a white Mustang, driven by the defendant, and that the defendant caused the decedent's death. The State noted that the defendant had a prolific record of traffic infractions and that he was convicted of felony theft in 2017. The State further noted that the defendant was on probation for the felony offense at the time "he struck and killed the decedent" and at the time he "illegally possessed" firearms, ammunition, and cannabis.

¶ 20 The defendant's attorney recommended a sentence of six years. Counsel noted that the defendant pleaded guilty to leaving the scene of an accident involving death, not reckless homicide, that there was no malice involved, and that the defendant had taken responsibility for his actions. He acknowledged that the Schuh family had suffered a tragic loss. He also noted that they would receive compensation from the wrongful death settlement with the defendant. Counsel did not specifically object to the forfeiture of the firearms and ammunition, but suggested the defendant's stepfather, Lance Reece, had a FOID card and could take the weapons and ammunition. The defendant then made a statement in allocution, accepting responsibility for his conduct.

¶ 21    After considering the presentations and arguments, the trial court sentenced the defendant to 13 years in prison, followed by 12 months of mandatory supervised release. The court also ordered the defendant to pay $50,000 in restitution to Kimberly Schuh, along with fines, fees, and court costs.[2] The court determined that the restitution would pay the bill for attorney fees that should not have to come out of the wrongful death settlement. The court did not set forth the manner of payment, *i.e.*, whether the restitution would be paid in installments or in a lump sum, or a deadline for full payment of restitution. In addition, the court found that the State had presented enough credible and reliable evidence to show the defendant was in possession of firearms and ammunition at the time he committed the present offense. The court ordered the defendant to forfeit the firearms and ammunition to the Illinois State Police. That same day, March 23, 2022, the court issued a written judgment and sentencing order.

¶ 22    On April 20, 2022, the defendant filed a motion to reconsider his sentence. The defendant argued that the 13-year sentence was excessive, and that the trial court failed to adequately consider relevant factors in mitigation and the defendant's acceptance of responsibility for his conduct. On July 12, 2022, the defendant filed an amended motion to reconsider his sentence. The defendant reasserted his previous arguments. In addition, the defendant claimed that the trial court erred in entering a forfeiture order in the absence of a written motion and proper notice to the defendant. The defendant further claimed that the trial court erred in considering that the defendant's conduct caused or threatened harm as a factor in aggravation because death and great bodily harm were inherent in the offense and the court's consideration of those as factors resulted in an improper sentencing enhancement.

---

[2]In its sentencing order, the trial court noted that a petition to revoke the defendant's probation in an unrelated case was withdrawn and dismissed.

10

¶ 23    On November 30, 2022, the trial court amended the defendant's prison sentence to a term of 12 years, followed by 12 months of mandatory supervised release. The court did not alter its prior orders regarding restitution, fines, fess, and costs. The court granted the State leave to respond to the defendant's forfeiture argument, reserving its ruling on that issue. Subsequently, the parties reached an agreement on forfeiture. On December 21, 2022, the court entered an agreed order directing that all seized firearms and ammunition would be forfeited to the Illinois State Police. This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, the defendant claims that the trial court erred in ordering restitution because the victim's economic loss was not proximately caused by the criminal conduct for which the defendant was convicted. The defendant also claims that restitution was improper because the legal fees incurred by Kimberly Schuh were not "out-of-pocket" expenses where the family was to receive $500,000 from the settlement of the wrongful death claim against the defendant. As an argument in the alternative, the defendant claims that the order of restitution should be vacated because the trial court did not comply with the requirements of section 5-5-6(f) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-6(f) (West 2020)). Specifically, the defendant argues that the trial court failed to determine the specific manner of payment, taking into consideration the defendant's ability to pay. The defendant acknowledges that he failed to preserve these claims of error and requests review under the second prong of the plain-error doctrine. In response, the State argues that the defendant failed to show that the alleged errors regarding the propriety of restitution violated the defendant's fundamental right to a fair sentencing hearing, and therefore the defendant's forfeiture of those errors should be honored. However, the

11

State concedes that a remand is required for compliance with the statutory requirements to set the time and manner for full payment of restitution.

¶ 26 The plain-error doctrine bypasses ordinary forfeiture principles and allows a reviewing court to consider unpreserved error when a clear or obvious error occurred and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 175, 186-87 (2005). In the context of sentencing, a defendant must show that a clear and obvious error occurred, and that either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Under the first prong of the plain-error doctrine, the defendant must show that the plain error was prejudicial. *Herron*, 215 Ill. 2d at 187. Under the second prong, prejudice to the defendant is presumed because of the importance of the right involved. *Herron*, 215 Ill. 2d at 187. Under either prong, the burden of persuasion is on the defendant. *Herron*, 215 Ill. 2d at 187. If the defendant fails to satisfy his burden, his procedural default must be honored. *Hillier*, 237 Ill. 2d at 545. The initial step in plain-error analysis is to determine whether any error occurred. *Hillier*, 237 Ill. 2d at 545. Therefore, we must determine whether the trial court committed a clear and obvious error when it determined that restitution was appropriate in this case.

¶ 27 Section 5-5-6 of the Code of Corrections sets forth specific requirements for the imposition of restitution and provides in pertinent part as follows:

"In all convictions for offenses in violation of the Criminal Code of 1961 or the Criminal Code of 2012 or of Section 11-501 of the Illinois Vehicle Code in which the person received any injury to his or her person or damage to his or her real or person property as a result of the criminal act of the defendant, the court shall order restitution as provided in this Section. In all other cases, except cases in which restitution is required under this Section, the court must at the sentencing hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense. If the court determines that an order directing the offender to make restitution is appropriate, the offender may be sentenced to make restitution." 730 ILCS 5/5-5-6 (West 2020).

¶ 28    In fixing the amount of restitution, the trial court shall assess the actual out-of-pocket expenses, losses, damages, and injuries "proximately caused by the same criminal conduct of the defendant." 730 ILCS 5/5-5-6(b) (West 2020). Taking into consideration the ability of the defendant to pay, the trial court must determine whether the restitution should be paid in a single payment or installments, and the court must set a deadline for full payment of the restitution. 730 ILCS 5/5-5-6(f) (West 2020). Compliance with the requirements in section 5-5-6 is mandatory. *People v. Boots*, 2022 IL App (2d) 200640, ¶ 51.

¶ 29    Generally, the trial court's decision to order restitution will not be reversed on appeal absent an abuse of discretion. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35. When the issue is whether a restitution order is authorized by and in compliance with the requirements in section 5-5-6 of the Code of Corrections, that issue presents a question of law that is reviewed *de novo*. *Cameron*, 2012 IL App (3d) 110020, ¶ 35.

¶ 30    The defendant initially claims that the trial court committed a plain and obvious error in ordering restitution. He argues that restitution was not proper because the victim's economic loss

13

was not proximately caused by the criminal conduct for which the defendant was convicted. He also argues that the victim did not incur an out-of-pocket loss where the family received financial compensation through the wrongful death settlement with the defendant.

¶ 31    Section 5-5-6(b) of the Code of Corrections provides that in fixing the amount of restitution, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries "proximately caused by the same criminal conduct of the defendant." 730 ILCS 5/5-5-6(b) (West 2020). The court shall not order restitution to be paid on account of pain and suffering. 730 ILCS 5/5-5-6(b) (West 2020). The purpose of this section is to make victims whole for any economic losses incurred at the hands of the defendant and to require the defendant to pay for all economic losses caused by his conduct. *People v. Fontana*, 251 Ill. App. 3d 694, 707 (1993). To give effect to the statutory purpose, the phrase "same criminal conduct" has been construed broadly to include "uncharged but related offenses based on a series of acts with the same mental state affecting the same victim." *Fontana*, 251 Ill. App. 3d at 707. Thus, a defendant may be ordered to make restitution for losses proximately caused by the same criminal conduct as that of which he was convicted. *Fontana*, 251 Ill. App. 3d at 706. The trial court may order restitution for losses incurred by the same victim as a result of the same criminal acts of the defendant, even if the losses were not set forth in the charging instrument. *Cameron*, 2012 IL App (3d) 110020, ¶ 36; *People v. Clausell*, 385 Ill. App. 3d 1079, 1081 (2008). However, the trial court may not impose restitution for charges for which a defendant was acquitted or for losses extraneous to the charges at issue. *Clausell*, 385 Ill. App. 3d at 1081.

¶ 32    In this case, the State alleged that the defendant was the driver of a motor vehicle "involved in a motor vehicle accident" resulting in the death of William Schuh and that the defendant failed to immediately stop his vehicle and remain at the scene, and further failed to report the accident as

14

soon as possible in violation of section 11-401(b) of the Illinois Vehicle Code (625 ILCS 5/11-401(b) (West 2020)). For purposes of section 11-401, courts have construed the phrase "involved in a motor vehicle accident" to mean "implicated in an accident or connected with the accident in a substantial manner." See, *e.g.*, *People v. Brady*, 369 Ill. App. 3d 836, 845-46 (2007); *People v. Kerger*, 191 Ill. App. 3d 405, 409-10 (1989).

¶ 33    During the sentencing hearing, the State presented evidence and argument, without objection, indicating the defendant drove a motor vehicle; that the defendant was involved in a motor vehicle accident; and that the defendant caused the accident that killed the decedent, and then failed to report the accident. The State also introduced a letter, again without objection, indicating that the Schuh family had incurred $35,000 in legal fees resulting from the decedent's death, and that final legal fees were expected to exceed $50,000. Based upon the evidence presented during sentencing hearing, the trial court determined that restitution was appropriate and ordered the defendant to pay $50,000 in restitution. The trial court reasoned that the victims incurred substantial economic and non-economic losses as a result of the decedent's death, and that the legal fees related to the administration of the decedent's estate should not be paid from the wrongful death settlement. After reviewing the record, we find that there was sufficient unrebutted evidence to show that the defendant was "implicated" in and "substantially connected" to the motor vehicle accident that resulted in the decedent's death and that the defendant caused the accident. We further find that the legal fees were economic losses resulting from the decedent's death and they were proximately caused by the same conduct as that for which the defendant was convicted. Therefore, under the facts and circumstances in this case, we do not find that the trial court committed an error, much less a clear and obvious error, in ordering the defendant to pay $50,000 in restitution.

¶ 34   Next, the defendant argues, and the State concedes, that the trial court failed to set forth the manner and time of payment as required under section 5-5-6(f) of the Code of Corrections (730 ILCS 5/5-5-6(f) (West 2020)). Section 5-5-6(f) requires the trial court to determine the method and manner of payment, taking into account the defendant's ability to pay. 730 ILCS 5/5-5-6(f) (West 2020). In this case, the trial court did not specify whether the restitution was to be paid in installments or in a lump sum, and it did not set a specific date by which the defendant was to fully pay the restitution. The failure to set forth the manner and time limit for payment of restitution creates confusion, uncertainty, and potential unfairness for both the defendant and the victim. A defendant needs to know the deadline for payment of restitution because there are actual consequences for not paying restitution in the time and manner specified by the court. *Boots*, 2022 IL App (2d) 200640, ¶ 53. Therefore, we find that the trial court's failure to set forth the time limit and the manner of payment of restitution is a clear and obvious error that undermined the fairness of the sentencing process. *Boots*, 2022 IL App (2d) 200640, ¶¶ 52-53. And, even if the error did not rise to the level of second-prong plain error, this court may overlook the defendant's forfeiture and review an unpreserved error in the interests of justice. *Boots*, 2022 IL App (2d) 200640, ¶ 54. Accordingly, we must remand this case to the trial court with specific directions to determine and set forth a reasonable time limit and manner for payment of restitution. In determining the reasonable time and manner of payment, the trial court must consider the defendant's ability to pay. See *Boots*, 2022 IL App (2d) 200640, ¶ 51; *People v. Day*, 2011 IL App (2d) 091358, ¶ 56.

¶ 35   The defendant next claims that the State failed to present adequate evidence to establish that he was in possession of the firearms and cannabis found in his deceased father's garage, and therefore the trial court erred in considering this as a factor in aggravation. The defendant concedes that he forfeited this claim of error because he did not raise it in his amended motion to reconsider

16

sentence. The defendant argues that a sentence based upon an improper sentencing factor impinges on the defendant's fundamental right to liberty and is reviewable under the plain-error doctrine.

¶ 36    There are differences between the evidentiary standards required in the guilt-innocence phase of a trial and those used in sentencing. *People v. Jackson*, 149 Ill. 2d 540, 547 (1992). During the aggravation/mitigation stage of sentencing, the ordinary rules of evidence are relaxed, and relevance and reliability are requirements for admissibility of evidence at sentencing. *People v. Ward*, 154 Ill. 2d 272, 333 (1992); *Jackson*, 149 Ill. 2d at 549. The burden of proof at sentencing is lower than proof beyond a reasonable doubt standard. *Jackson*, 149 Ill. 2d at 549. At sentencing, the trial court is given broad discretion to consider various sources and types of information to aid in the sentencing determination. *People v. Harris*, 375 Ill. App. 3d 398, 408 (2007).

¶ 37    Possession may be either actual or constructive. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. In this case, there is no dispute that the defendant was not found in actual possession of the weapons, ammunition and cannabis found in his deceased father's garage. Therefore, we consider only whether the State presented relevant and reliable evidence to show that defendant was in constructive possession of those items. To establish constructive possession, the State must show that the defendant had knowledge of the presence of the contraband, and that he had immediate and exclusive control over the area where the contraband was discovered. *Jackson*, 2019 IL App (1st) 161745, ¶ 27; *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Knowledge may be inferred from surrounding circumstances, such as the defendant's actions, declarations, and other conduct that indicates the defendant knew the contraband existed in the place where it was found. *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband. *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Proof that the defendant had control over the premises where the

17

contraband was found gives rise to an inference of knowledge and possession of the contraband. *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Evidence of constructive possession is frequently circumstantial. *McCarter*, 339 Ill. App. 3d at 879.

¶ 38     After reviewing the record, we do not find that the trial court abused its discretion in finding there was relevant and reliable evidence to establish that the defendant had constructive possession of the contraband at issue. During the sentencing hearing, the State presented evidence that the Illinois State Police searched a property in Farmer City, Illinois, and discovered firearms, ammunition, and cannabis in an office area adjacent to a garage. The property was held in trust for the defendant since his father's death in the prior year. Investigators were informed that the defendant stayed at the residence on the property prior to his father's death and that no one else was staying there at the time the search warrant was executed. Two friends picked the defendant up at the property within hours after the accident. There was also evidence that the defendant's vehicle was stored in a garage on the premises. During the search of the garage and an adjacent office area, officers discovered firearms and hundreds of rounds of ammunition, and more than 500 grams of raw cannabis stored in glass jars, as well as growing cannabis plants. There was also evidence that the garage was being used as a living area. The police observed a pillow and blanket on a couch, and a drink next to the couch. Four unsecured weapons were also found near the couch. The defendant did not have an FOID card. In addition, the defendant was on probation for an unrelated felony offense at the time of the search. The defendant failed to show the trial court committed a clear and obvious error when the court considered this evidence in determining an appropriate sentence.

18

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated, this cause is remanded to the trial court with directions to determine and set forth a reasonable time limit and terms for the payment of restitution, taking into consideration the defendant's ability to pay. In all other respects, the judgment and sentence are affirmed. Because the defendant is near the completion of his prison term, the clerk of the court is directed to issue the mandate immediately. Ill. S. Ct. R. 368(a) (eff. July 1, 2006).

¶ 41    Affirmed and remanded with directions; mandate to issue immediately.